L. W. BLAKELY, Assignee in Bankruptcy of S. T. JONES & CO. *vs.* JOHN PATRICK, Adm'r. of S. T. STILLEY.

To maintain an action to recover the possession of personal property, whether resort is had to the provisional remedy of the Code of Procedure or not, the plaintiff must show title or a right to the present possession of the property sued for, which must be specific and be identified by a sufficient description.

A mortgage by a buggy-maker of "ten new buggies," without delivery of possession, he having more than ten on hand at the time, was ineffectual to pass title to any particular buggies or to any interest in the buggies on hand; and the mortgagee cannot maintain an action for the recovery of ten new buggies in the possession of the mortgagor, or his personal representative. *A fortiori* is this the case, if such buggies were not the same that were on hand at the date of the mortgage.

[*Jarman* v. *Ward*, 67 N. C.   *O'Neal* v. *Baker*. 2 Jon. 168.   *Jones* v. *Morris*, 7 Ire. 370.   *Waldo* v. *Belcher*, 11 Ire. 609, and *Powell* v. *Hill*, 64 N. C. 169, cited and approved.]

Civil action tried before *Clarke, J.*, at Spring Term, 1872, of the Superior Court of GREENE.

The action was commenced in January, 1869, by S. T. Jones & H. T. Bennett, under the name of S. T. Jones & Co., as plaintiffs, to recover possession of "ten new buggies" from the defendant as administrator of S. T. Stilley deceased; and they having complied with the provisions of Tit. IX. chap. 2, of the C. C. P., *nine* new buggies found in the defendant's possession were delivered to them by the sheriff. The plaintiffs became bankrupts, and S. M. Blakely, having been appointed their assignee, was made party plaintiff as such. He claimed title under a mortgage, executed by Stilley to S. T. Jones & Co., in July 1867, which purported to convey, with other personal property, "ten new buggies," to secure certain notes which were payable January 1st, 1868; and the mortgage was offered in evidence. The complaint goes on to state that Stilley was a manufacturer of buggies, dependent upon

his trade for support, and the property conveyed in the mortgage was left with him to enable him to prosecute his business, that he died in November 1867, and the defendant, soon thereafter being appointed his administrator, "took into his possession the entire personal estate of the said S. T. Stilley, amongst which were the ten new buggies mentioned in said mortgage."

The defendant's answer, admitting the other allegations of the complaint, alleges that all the buggies on hand at the execution of the mortgage (more than ten in number) had been sold by Stilley, and that the buggies claimed by the plaintiffs were made afterwards and not embraced in the mortgage. It denied that title to any particular buggies passed under the mortgage. Debts of higher dignity than the plaintiff's were also set up as a defence. It was in evidence on the trial that the mortgage was executed in Newberne, and that the plaintiff at the time had fifteen new buggies in his shop in Greene County, where he lived.

His Honor in his charge told the jury that the action was "an action for damages for the conversion of ten new buggies by the defendant," that under the mortgage he could claim ten buggies and no more, that Stilley became the trustee or stakeholder of Jones & Co., the mortgagee, and that the defendant was liable for the value of such of the buggies as went into his possession, with interest from January 1st, 1868. The defendant's counsel asked his Honor in writing for this instruction: "If the jury believe there were more than ten new buggies in the lot in Stilley's possession at the time the mortgage was made, and the ten were not separated by Stilley and Jones from the rest of the lot, then the plaintiffs cannot recover.

His Honor refused to give the instruction.

The jury returned a "verdict finding all issues in favor of the plaintiffs and assessed his damages at $127,25." The Court gave judgment accordingly and the defendant appealed.

*Battle & Son,* for the plaintiff.

*Smith & Strong,* for the defendant.

PEARSON, C. J. This is an action to recover the possession of personal property, to wit, ten new buggies—and damages for the detention. It appears by the *record proper,* that the provisional remedy was resorted to. Under it the sheriff seized nine new buggies that were of the estate of the intestate of defendant, and delivered them to the plaintiff. The judgment is that the plaintiff retain possession of the said property and also recover $127, for damages and costs.

This reference to the *record proper* is made to prevent a confusion of ideas, that might be caused by the circumstance, that in the statement of the case his Honor says, in charging the jury ; " This is an action for damages, for the *conversion of the ten new buggies by the defendant.*" An action to recover the possession of personal property, where the provisional remedy is not resorted to is in effect the old action of *detinue,* and where it is resorted to the action is in effect the old action of *replevin. Jarman* v. *Ward,* at this term.

In either case, to maintain the action, the plaintiff must show title or a right to the present possession of the thing which is the subject of the action, and the thing sued for must be specific, and be identified by a sufficient description. *O'Neal* v. *Baker,* 2 Jones 168. *Jones* v. *Morris,* 7 Ire. 370.

The defendant's counsel asked his Honor, in writing, for this instruction, " if the jury believe there were more than ten new buggies in the lot in Stilley's possession at the time the mortgage was made, and *the ten* were not separated by Stilley and Jones from the rest of the lot, then the plaintiff cannot recover ?" which was refused. There is error. *Waldo* v. *Belcher,* 11 Ired. 609. That case is decisive of the question. It was fully argued by counsel on both sides, and, after due consideration, an opinion was filed, which is sustained by the reason of the thing and by the authorities cited. We do not feel called on to review it. In our case the complaint sets out that Stilley

was a manufacturer of buggies, and " the property was left with him, to enable him to prosecute his business," leaving it to be inferred that the buggies on hand at the date of the mortgage were disposed of by Stilley, in the course of his business, and he, from time to time, made other buggies and put them in the lot, in the place of such as he had sold. The answer distinctly avers, that the buggies on hand at the date of the mortgage were sold, and the buggies now claimed have been made since the mortgage.

This fact seems not to have been adverted to on the trial, and yet it has a direct tendency to show that the present action is entirely outside of the mark, and " hits at " a set of buggies different from those on hand, which it is supposed the parties attempted to convey at the date of the mortgage.

The legal effect of the mortgage, in this instance, was not to pass the title to ten new buggies as an executed contract or sale, but *if it has any effect at all*, it is to create an *executory contract*, or an agreement to sell and deliver ten new buggies, for a breach of which contract damages may be recovered. We qualify the proposition ; for here there was no price paid, and the only consideration for the contract was to secure debts, that is, a promise to secure the performance of another promise. But whether an action be brought on the latter promise, or on the first promise, to wit, the " two notes," the defendant, who is the administrator of the debtor, can avail himself of the want of assets, as he has done in this case, and the plaintiff cannot lay hands on ten buggies that happened to be on hand at the death of the debtor, but must be content to take his chances with the other creditors, according to the course of administration.

In considering the question it was suggested, may not the mortgage deed be allowed to have the effect of making Jones a tenant in common with Stilley in the lot of fifteen new buggies, so as to give him three undivided fifth parts, and bring it within *Powel* v. *Hill*, 64 N. C., 169 ? The reply is, that view,

even if tenable, will not aid the plaintiff to maintain this action; for it is held in *Powel* v. *Hill* that the remedy is not by a civil action to recover the possession, but by a special proceeding before the Judge of Probate for partition.

But a more decisive reply is: In *Powel* v. *Hill* the relation of tenants in common was created by the agreement, according to which the plaintiff was to work on the farm and to have a certain part of the crop for his labor (say one-third part), and the crop being made and housed, it is held that he was a tenant in common, entitled to have his part on partition. So it may be admitted that if Stilley had agreed to let Jones have an undivided part of the lot of new buggies, (say two-fifth parts,) the relation of tenants in common would have been created. But that is a very different matter from an agreement to let Jones have *ten* of the lot of fifteen new buggies, without specifying or setting apart the identical ten that he was to have. In the former case no delivery, either actual or constructive, was required to establish the relation of tenants in common. Indeed, the idea of delivering or setting apart ten of the number would be inconsistent with the relation by which he was to be entitled to two-fifths part of the undivided whole; whereas, in the latter case, the very purpose was that ten of the number should be the *sole property* of Jones. To vest the title or ownership in any particular buggies, it was necessary to set them apart, so as to make a constructive delivery, and effect an executed contract; in the absence of such identification, the agreement, as we have seen, was executory only.

Suppose Jones to be entitled as tenant in common to two-fifths parts, and some one or two of the buggies had been destroyed—the loss would fall upon both of the tenants in common, and Jones would only have the two-fifths parts of what was left; but suppose Jones to be entitled to ten new buggies of the lot of fifteen, under the executory agreement, and some one or two of these had been destroyed—the loss would fall on

Stilley, and Jones would call for ten new buggies. Note the diversity.

There is error.

PER CURIAM.                                          *Venire de novo.*