W. E. SPIVEY v. A. AND J. M. GRANT.

*Evidence—Agricultural Lien—Mortgage—Description of Property in—Ambiguity—Usury.*

1. Where a mortgage does not properly describe the property mortgaged, or where, being intended as an agricultural lien, it does not comply with the requirements of the statute, the objection cannot be made to the admission of the instrument in evidence, but goes to its legal sufficiency as a conveyance.

2. Where a mortgage is made of personal property for the purpose of obtaining supplies to make a crop with, which mortgaged property is claimed by a third party, it is competent evidence, to show by the mortgagor, any matters necessary to a full understanding of the case.

3. Where the property is described in a mortgage as "one horse," and the mortgagor only has one horse, the description sufficiently points out the property conveyed, and parol evidence is admissible to identify it, but if he has more than one horse, then it is a patent ambiguity, and nothing passes.

4. Where a mortgage conveyed "one yoke of oxen," and it appeared that the mortgagor owned four oxen when the mortgage was made, a charge which instructed the jury, that the oxen would none of them be included, unless they were satisfied that some particular two were usually worked together as a yoke, was held to be correct.

5. Where an instrument is intended by the parties to operate as an agricultural lien under the statute, but it fails to set out some essential matter so that it cannot take effect as such statutory lien, it will yet be given effect as a common law mortgage, if in form sufficient for that purpose.

6. Where several persons unite in executing a bond to a commission merchant for supplies to be furnished them, and one of them gives a chattel mortgage to secure the amounts advanced to him, which martgage erroneously recites the amount of the bond, but truly specifies the amount of the advances made to the mortgagor; *It was held*, that the variance was immaterial.

7. Where several persons unite in executing a bond, a change made by the obligee with the consent of one of them does not vitiate the bond as to him, whatever its effect may be as to the others.

8. Where a mortgage is executed to secure a usurious note, the usury only affects the interest and does not impair the validity of the mortgage.

9. The power of the Court to allow amendments so as to fit the complaint to the evidence, is too well settled to require discussion or citation of authority.

(*Blakeley* v. *Patrick*, 67 N. C., 40; *Sharp* v. *Pearce*, 74 N. C., 600; *Goff* v. *Pope*, 83 N. C., 127; *Rawlings* v. *Hunt*, 90 N. C., 270; cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge*, and a jury, at Spring Term, 1886, of NORTHAMPTON Superior Court.

There was a judgment for the plaintiff, and the defendants appealed.

The facts fully appear in the opinion.

*Mr. R. B. Peebles*, for the plaintiff.
*Messrs. W. C. Bowen* and *T. N. Hill*, for the defendants.

SMITH, C. J. The defendant Adbeal Grant, against whom the plaintiff brings his action for the recovery of certain articles of personal property, and thirteen others belonging to the Roanoke Grange, entered into an arrangement with the produce and commission house of Jones, Lee & Co., of Norfolk, Va., to secure advancements to each in the cultivation of their several crops during the year 1883. It was agreed that the former should unite in giving a single bond for the aggregate of the sums desired, and that each should secure by deed in trust, his separate share thereof to the latter. One of the grangers, W. C. Woodruff, acted for the others in making the necessary arrangements to obtain the required supplies. In carrying out the agreement, the said Woodruff, Adbeal Grant, and their associates, made their bond in these terms, and bearing their signatures and seals :

" $2,341.05.        On demand, 1st November, 1883, with interest from date at nine per cent., we owe and promise to to pay Messrs. Jones, Lee & Co., the just and full sum of two thousand three hundred and forty-one dollars and five cents. This 1st day of April, 1883."

At the same date, the defendant Adbeal Grant executed a deed in trust to the plaintiff, and under which he claims the personal property demanded in the action, which deed is in the following form :

"A. Grant, of the county of 'Northampton and State of North Carolina, is justly indebted to Messrs. Jones, Lee & Co., of the city of Norfolk, Va., in the sum of eleven hundred dollars, for which they hold a joint note given by A. Grant, J. C. Grant, R. S. Barham, W. P. Lowe, E. W. Spivey, W. H. Vaughan, W. E. Woodruff, B. T. Parker, S. C. Williams, J. H. Wood, J. A. Soaby, K. D. Vaughan, J. W. Spivey, being dated April 1st, 1883, and due November 15th, 1883, with interest at rate of 9 per cent. per annum, from date, and to secure the payment of the same, I do hereby convey to W. C. Spivey, of the county of Northampton and State of North Carolina, trustee, these articles of personal property, to-wit : eight mules, two horses, one yoke oxen, farming utensils on the Yellowly farm, and a lien on all the crops to be culti-vated and made by me during the year 1883, according to an act of the General Assembly of North Carolina, entitled an act to secure advances for agricultural purposes. But on the special trust, that if I fail to pay said debt and interest on the same, on or before the 15th day November, 1883, then the said W. E. Spivey, trustee, may sell said property, or so much as may be necessary, by public auction, for cash, first giving twenty days' notice at three public places in said county, and apply the proceeds of such sale to the payment

·of said debt and interest on the same, and pay the surplus, if any, to me.

Given under my hand and seal, this the 1st of April, 1883.

A. GRANT, [Seal.]

Witness: J. M. GRANT."

The deed, after probate and registration, with the note under seal, were sent to Jones, Lee & Co., who refused to .accept them. Thereupon, one of the firm, representing it in the negotiations, and in the presence and with the consent of the said Abdcal and Woodruff, corrected the bond by changing the day of the maturity to the 15th of November, and the rate of interest to eight per cent., and the same reduction in the rate of interest was made in the recital in the deed in trust as well as in the registry.

The defendant J. M. Grant was permitted on application to interplead and set up title to the property in himself, and thus controvert the plaintiffs' claim. He asserts that the property, except the crops, together with a plantation, was purchased by himself and said Adbeal on December 22d, 1882, from Alanson Capehart, the title to the lands being retained until the fifteen hundred bales of lint cotton, to be delivered in annual parts during a series of years, the consideration agreed on, were all delivered, with other provisions contained in the instrument, not of special significance in the dispute. He further relies on a covenant or deed, of which the following is a copy:

" This is to witness and show, that whereas we, J. M. Grant and A. Grant, have jointly purchased of Alanson Capehart, a farm on Roanoke river, with all the stock, mules, horses, cattle and all the farming implements thereon, and did agree before the making the purchase, where the dividing line on the land should be, and that each one of us should take and cultivate his part of the farm as agreed upon, and

should divide all the personal property equally between us and use the same to best advantage in making the crops, and each one of us obligating to pay each and every year one half of the cotton we were mutually or jointly obligated to pay, as specified in the contract with said Capehart, which contract is now of record in register's office in said county.

"Be it known to all whoever it may concern, that it was and is understood between us, that all of said personal property as divided between us, should and shall be held, and the legal title to the same remain in us jointly, and if either of us should fail to or refuse to make our equal part of the payment as above specified, then and in that event, the title to said property shall be in the other, and it was and is further understood, that if either one of us should think or consider it to be to our advantage to exchange any of the stock thus held by us for other stock or property, then that which may be received in exchange shall be held in place of the other that was exchanged.

"In witness of our agreement or understanding as made between us at the time of making the purchase of said property jointly, we and each of us have hereunto set our hands and seals, this 29th day of October, 1883.

Witness:　　　　　　　　　J. M. GRANT, [Seal].
　　H. H. GRANT.　　　　　A. GRANT,　[Seal]."

Issues were drawn up and submitted to the jury, whose responses thereto are as follows:

1st. The plaintiff is the owner of some part of the property mentioned in the contract, and the said J. M. Grant to none of that demanded in the complaint;

2d. The damages sustained by the wrongful withholding is $940.41, with interest to be added from December 1st, 1883;

3d. The value of the crops taken is $394.41, (which it is conceded is embraced in the damages assessed);

4th. The $2,341.05 bond was not after delivery, fraudulently altered by the obligees.

It was admitted that the property seized in the claim and delivery order has been converted by said J. M. Grant to his own use, and could not be restored in kind, and that $1,100 had been advanced to Adbeal Grant; and further, that the correct date of the deed to the plaintiff was March 1st, instead of April 1st.

Several exceptions were taken to evidence offered on the trial, to-wit:

I. To the admission of the deed to plaintiff, for that the crop and other personal property are insufficiently described, and that while purporting to create an agricultural lien, the instrument does not possess the statutory requirements. It is obvious that the objection does not lie to its introduction as evidence, but to its legal efficacy as a conveyance.

II. To the testimony of A. Grant in reference to the farm whereon the crops seized by the sheriff were grown in 1883; to his description of the property he owned when he made his deed; to his admission that he had paid no part of his debt, and that no money was paid when the deed was executed, and that money and supplies were furnished and used in the cultivation of the lands bought of Capehart; and to his explanation of the uses to which the advances were put.

We see no well grounded objection to this testimony as to facts which tend to elucidate and explain the matters in contention, and which was not only competent, but necessary to a full understanding of the rights and relations of the parties.

For himself, the said J. M. Grant on his examination testified, that when he became an attesting witness to the deed, he did not know of its contents; that himself and Adbeal Grant divided the property bought of Capehart, and each exercised no control over that taken by the other; and noth-

ing was said about its being, as a whole, responsible for the purchase money due the vendor.

W. C. Woodruff was allowed, after objection from the defendant, to explain the arrangement made between the firm of Jones, Lee & Co., and the members of the grange; the refusal of the firm to accept the large bond and the securing deed in its present form, and the alterations made in each by the consent of the maker of the deed, the firm, and the witness.

The testimony was admitted as showing the details of the transaction, the Judge remarking that the pleadings could be amended to conform to the facts proved.

The objection is equally untenable as were the others, and for reasons unnecessary to repeat.

We now come to the consideration of the substantial merits of the controversy, and to the contentions of the defendant as contained in the series of instructions asked. These in brief are as follows:

1. The variance between the large bond, and that recited in the deed as its consideration, and the absence of proof of the alleged indebtedness.

2. The want of explanatory evidence in reference to the change in the date of the maturity of the bond, the presumption being that the alteration was after execution.

3. The description of the chattels in the deed is too vague to render the conveyance operative.

4. There is a failure of proof that the farming utensils were on the Yellowly farm when the deed was made.

5. The deed professing to create an agricultural lien, and not conforming with the statute, cannot operate as such, nor has it any efficacy as a common law mortgage or deed in trust.

The Court did not give these directions, but instructed the jury that in considering the first issue, it was material for them first to determine whether at the time of executing the

trust deed, the property, seized was owned by A. Grant, or was so far under his exclusive control, as to authorize him to convey it; that it was in evidence that before the execution of said trust, A. and J. M. Grant had purchased land and personal property of Capehart, and that they had divided the land between them, and had also made a division of the property; that it was in evidence that the Yellowly place was a part of the land assigned to A. Grant, and that he cultivated the cotton seized in this action on the same, during the year 1883; that it was also in evidence that a part, if not all, of the chattel property seized, was purchased of said A. Capehart, and that they had actually divided the same, each having exclusive possession and control of his part, and that the part seized was a part of that which was assigned to A. Grant in the division.

The Court also charged, that if there had been such a division of the chattel property, and the same was final and absolute, that A. Grant had a right to convey his part by way of trust for money and supplies, and that as to the crop, if it was grown by A. Grant upon the Yellowly farm in 1883, and the same had been assigned to said A. Grant, and was under his exclusive management and control, that he would also have a right to convey the crops for the purpose of obtaining money and supplies to aid him in the cultivation of the same.

That if they found under these instructions, that the plaintiff had a right to make such a trust of said property, that before the plaintiff could recover, it was necessary for him to show that the property seized was conveyed by the trust; that said trust calling for two horses, and it appearing that at the date of the execution of the same, that A. Grant had more than two horses, and said horses not having been more particularly described, that the plaintiff could recover none of them; that if at the time of the execution of said trust, A. Grant had only eight mules, and the six seized were a part

of the same, then the same would be included in said trust; that if he had more than eight, or if the six seized were not a part of the eight, that none of the mules would be covered by the trust, and that plaintiff could recover none.

The Court further charged, that if the farming utensils seized by the sheriff were on the Yellowly farm at the time the deed in trust was executed, that they would be included in the deed, otherwise they would not be so included; that if the cotton seized by the sheriff was raised during the year 1883, on the Yellowly farm, it would also be included in said deed; that as to the oxen, there being four, and the deed calling for a yoke of oxen, they would not be included in the deed, unless they were satisfied that any particular two were usually worked together as a yoke, and there was but one such yoke.

The Court declined to charge the jury in reference to the alleged variances, as requested by defendant J. M. Grant, and charged the jury that if A. Grant had, under the instructions given, authority to convey the property by the trust, and had done so, under the instruction, and they believed that advances were actually made to the extent of $1,100 under said trust, that no part of the same had been paid, and that the note was given as testified to by Woodruff, and the transaction was such as he stated, and the money and supplies advanced under such agreement; that they would find for the plaintiff, otherwise they would find in favor of defendant.

As to the alleged alteration, the Court charged that it was incumbent on the plaintiff to satisfy the jury that the alteration in the deed and note were made by consent, and unless he did so, they would find the issue against him; that the law presumed that the alterations were made after execution.

The jury found the issues as heretofore stated.

The defendant J. M. Grant moved for a new trial:

Because of the admission of evidence excepted to, and for other alleged erroneous rulings made during the trial of the cause, and the directions given to the jury.

The complaint was amended so as to fit the facts in evidence, as before intimated, and to this, exception was also taken.

The assigned errors are now to be examined, and our first inquiry will be directed to the description of the property. The words in the deed are: "These articles of personal property, to-wit: eight mules, two horses, one yoke oxen, and all the farming utensils on the Yellowly farm, and a lien on all the crops to be cultivated and made by me during the year 1883, according to an act of the General Assembly of North Carolina, entitled an act," &c.

The interpretation put upon, and the legal efficacy given to this clause, are, we think, open to no just complaint on the part of the appellant, and as to the oxen, seems to be in keeping with the ruling in *Blakeley* v. *Patrick*, 67 N. C., 40; where it is decided, that a mortgage of ten new buggies, there being more than that number then on hand, without distinguishing them, passed no title to any, for want of identification. The Court said, "to vest the title or ownership in any particular buggies, it was necessary to set them apart, so as to make a constructive delivery, and effect an executed contract; in the absence of such identification, the agreement, as we have seen, was executory only." Acting upon this decision, the plaintiff was declared not to be entitled to two of the three horses owned by the mortgagor.

The charge in regard to the mules stands upon a different footing. The defendant had more mules than the number mentioned, and there was no separation of some from a larger number, all equally answering the description necessary. The possession of a single horse, and none others by the vendor in a conveyance of a horse, without more specific description, sufficiently points out and designates the animal to transfer

property to the vendee. In *Sharp* v. *Pearce*, 74 N. C., 600, the conveyance was of "one horse," and this was recognized as a sufficient indentification.

In *Goff* v. *Pope*, 83 N. C., 127, when parol proof was offered to show the article intended to be transferred, and even to correct a part of the false description, and heard, this language is used in the opinion: "A horse, a buggy or a cow is sold; how can the article be separated from others of the same class, except by the aid of parol testimony? The generality of the description, in many cases unavoidable, is latent ambiguity, discoverable when the object is sought, and removable by outside evidence of intent."

The law is fully discussed under the 7th proposition, in Wigram on Wills. The rule is, in such cases, to admit parol evidence for the purpose of identification, as if, in the case of *Blakeley* v. *Patrick*, *supra*, the parties had at the time selected and set apart the ten buggies, or had in some other manner shown which were meant, and this although the description was general and indefinite without such aid. Here there is no difficulty in ascertaining what horses are meant, for all are embraced, and there can be no need of a resort to other methods of finding out which were intended.

The case cited in opposition, *Kelly* v. *Reid*, 57 Miss., 89; does not refer to a single adjudication in support of the particularity required, and we think it an incorrect ruling upon principle and authority. A fair and reasonable rendering as to the crops, is to designate such as were to be grown on the Yellowly farm, on which were the implements to be used in making them.

If the intent of the parties was to execute an instrument, such as the statute authorizes, and they fail in some essential part of its requirements, and the instrument is nevertheless in form sufficient to operate as a conveyance under the general law, there is no reason why it should not be upheld. Indeed, the principle is expressly decided in *Rawlings* v.

*Hunt,* 90 N. C., 270; where the previous rulings on the subject are examined, and the correct rule laid down.

The objection based upon the non-production in evidence of any such note or bond as is recited in the deed, and consequent want of consideration, is without force.

1. The answer sets up no such defence, but insists that the bond as originally drawn was usurious—was annulled by the alteration made without consent of all the parties—and is inconsistent with the recitals in the deed.

While it is true the defendant Adbeal owes as well as the others the whole amount of the bond, his individual indebtedness for supplies furnished him would be, but for the bond, only $1,100, and this, which was to be secured by deed in trust, subsists independently, and is a sufficient consideration to sustain the deed.

But the discrepancy is more apparent than real. The language in the recital of the purposes of the conveyance, while not very exact, embodies the substance of the transaction as understood by the parties. It mentions the personal indebtedness of the maker as being $1,100, which is included in the joint bond executed by all whose names are given, and correctly described except in its erroneous mention of the day of maturity, and the security is provided and accepted for this separate portion of the debt. It is in no sense voluntary, but a conveyance made in pursuance of the general agreement, and to give it effect as to this one of the debtors. The change in the bond, whatever may be the effect upon others not consenting, cannot impair the efficacy of the security provided for the distinct and personal liability of Adbeal Grant for advances received by him, which subsists independently of the bond. Nor can the change in the rate of interest, assented to by him, made in the deed, impair its force as to him. Had it remained, it would have only affected the obligation to the extent of the interest, not the conveyance as a valid act.

The right to amend is too well settled to need comment. There is no error, and the judgment must be affirmed.

No error.                                        Affirmed.