EARL PEEK v. WACHOVIA BANK & TRUST COMPANY AND SHERMAN MOFFITT.

(Filed 13 April, 1955.)

**1. Chattel Mortgages and Conditional Sales § 2—**

A chattel mortgage on a tractor unit, which describes the vehicle by make, trade-name, and year, is sufficient when all the evidence tends to show that the mortgagor owned only the one tractor, and such evidence supports a peremptory instruction that the vehicle was covered by the instrument.

**2. Trial § 29—**

Where all the evidence bearing on an issue points in the same direction and justifies but a single inference, an instruction to answer the issue in the affirmative if the jury finds the evidence to be true, will be upheld. When the credibility of the evidence is left to the jury, it is a peremptory instruction as distinguished from a directed verdict.

**3. Estoppel § 5—**

The conduct of the party claiming an estoppel must be considered no less than the conduct of the party sought to be estopped.

**4. Estoppel § 6a—Elements of equitable estoppel.**

A party asserting an equitable estoppel must show conduct on the part of the party sought to be estopped which amounts to (1) a false representation or concealment of material facts or which is reasonably calculated to mislead; (2) intention or expectation that such conduct should be acted upon or which is calculated to induce a reasonably prudent person to believe such conduct was to be relied upon; (3) knowledge, actual or constructive, of the real facts. The party claiming the estoppel must further

show on his part: (1) lack of knowledge and the means of knowledge as to the truth of facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon to his prejudice.

**5. Same—**

In the absence of actual fraud, a party asserting an estoppel must not have been misled through his own want of reasonable care and circumspection.

**6. Estoppel § 11b—**

A defendant pleading estoppel by way of affirmative defense has the burden of proof upon the issue.

**7. Trial § 29—**

A verdict may not be directed in favor of the party upon whom rests the burden of proof.

**8. Same—**

The court may give a peremptory instruction upon an issue in favor of the party upon whom rests the burden of proof only when but a single inference can reasonably be drawn from the undisputed facts in evidence.

**9. Estoppel § 11c—**

A bank holding a junior mortgage asserted that the senior mortgagee was estopped from asserting the priority of his lien by reason of the fact that the senior mortgagee accompanied the mortgagor to the bank and represented that there were no liens upon the property. The evidence was conflicting as to whether the senior mortgagee, in endorsing the transfer of title with warranty against liens, read the instrument or if he read it, assumed that it referred to liens against him and not in his favor. *Held:* The court correctly refused to give a peremptory instruction on the issue of estoppel in favor of the junior mortgagee.

**10. Evidence § 40—**

The rule that parol evidence is not admissible to vary or contradict a written instrument applies when the enforcement of the writing is the basis of the cause of action or the substantial issue between the parties, and not when the writing is collateral to the issue involved in the action.

**11. Same—**

The warranty of title in the endorsement and transfer of title executed by the holder of the senior lien was set up as an estoppel by the mortgagee of the purchaser of the vehicle. *Held:* Testimony of the holder of the senior lien that he executed the endorsement in blank, did not read it, and that it was not notarized at the time of execution, does not violate the parol evidence rule, since the validity of the transfer of title was conceded by all the parties and was collateral to the substantial issues involved in the case.

**12. Appeal and Error § 29—**

Assignments of error which are not supported by reason, argument, or citation of authority in the brief, will be deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**13. Estoppel § 11b—**

Where the junior mortgagee contends that the senior mortgagee used the money borrowed from the junior mortgagee and secured by its instrument to make good a check given by the senior mortgagee to discharge a prior lien on the property, testimony of the senior mortgagee that he had other funds with which to make good the check is competent upon the issue of estoppel.

**14. Appeal and Error § 39e—**

The exclusion of testimony cannot be held prejudicial when appellant fails to show what the testimony would have been had the witness been permitted to answer.

**15. Appeal and Error § 6c (6)—**

The misstatement of a factual contention of a party must be brought to the court's attention in apt time.

**16. Subrogation § 1—**

In order for a person who lends money used in the discharge of a lien on property to be subrogated to the rights of the lienholder, it must not only appear that the money loaned was actually used to discharge the lien, but also that the money was advanced for this purpose, either by express understanding or by implication, and when there is no evidence that the money was advanced with the intent and for the purpose of extinguishing the prior lien, the court properly refuses to submit the issue of subrogation.

**17. Appeal and Error § 6c (5)—**

An exception to an excerpt from the charge ordinarily does not challenge the omission of the court to charge further on the same or another aspect of the case.

**18. Automobiles § 5—**

It is not required that the transfer and delivery of certificate of registration of title to a motor vehicle be made at the same time as the sale and transfer of title to the vehicle.

**19. Trial § 31f—**

The statement by the court of a valid contention of a party based on competent evidence cannot be held for error.

**20. Automobiles § 5: Estoppel § 6a—**

The printed form warranty of title contained in the assignment of title of a motor vehicle relates to liens against the assignor and not those in his favor, and therefore, nothing else appearing, the assignor is not estopped thereby from asserting a lien in his favor as against the mortgagee of the assignee.

**21. Payment § 2—**

In the absence of a contrary agreement, the delivery and acceptance of a check is not payment as between the parties until the check is paid.

**22. Chattel Mortgages § 15—**

Upon failure of the consideration for which a release or satisfaction of a mortgage is executed, such release or satisfaction ordinarily may be set

aside and the lien restored to its original priority as against the mortgagor, a volunteer or one chargeable with knowledge of the rights and equities of the mortgagee, but such priority may not be re-established as against a *bona fide* purchaser or encumbrancer who has acquired an interest in or lien upon the property in reliance upon the entry of satisfaction.

**24. Same: Estoppel § 11d—Conduct held merely circumstance to be considered by jury with other circumstances on issue of estoppel.**

At the time of the application for a loan by the assignee of title to a motor vehicle, the assignor of title had a purchase money mortgage, and had given a check to discharge a prior lien, which check he knew was not covered by sufficient funds. The assignor of title thereafter made the check good, and the prior lien was discharged, and there was no assertion of subrogation to the rights of the prior lienholder. The evidence was conflicting as to whether the assignor had sufficient income to make his check good without using the funds borrowed from the assignee's mortgagee. *Held:* The court correctly refused to instruct the jury on the issue of estoppel of the assignor to assert his lien, that it was the positive duty of the assignor to inform the assignee's mortgagee that the prior lien was outstanding and unpaid, the circumstance being at most a subordinate factor relating to the conduct and demeanor of the assignor to be considered by the jury with the other facts and circumstances upon the issue.

**25. Trial § 32—**

A party desiring instructions upon a subordinate feature of the case must aptly tender a request therefor.

**26. Appeal and Error § 8—**

The record and appellant's exceptions will be considered in the light of the theory of trial in the lower court.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant Wachovia Bank and Trust Company from *Sharp, Special Judge,* and a jury, at August 1954 Civil Term of BUNCOMBE.

Civil action in claim and delivery involving priority of chattel mortgage liens on an Auto Car diesel tractor.

On 7 May, 1951, the plaintiff Peek, operator of a fleet of long-distance motor transport units, purchased the 1948 model diesel tractor here involved from Carolina Garage, of Winston-Salem, North Carolina, and executed his purchase money note, secured by chattel mortgage on the tractor, for the deferred balance of $4,026.81. The chattel mortgage was recorded in the Public Registry of Buncombe County on 14 May, 1951.

On or about 1 May, 1952, Peek sold and delivered the Auto Car tractor to the defendant Moffitt for the sum of $5,000. Moffitt agreed to pay the balance of about $2,000 then due on the lien note held by

Carolina Garage and executed to Peek a purchase money note, secured by chattel mortgage on the tractor, for the deferred balance of $2,961.42, due in stated monthly installments. The note and chattel mortgage were executed 19 May, 1952. Both instruments contained the usual accelerating clause. The chattel mortgage was duly filed for registration 6 June, 1952.

On 23 June, 1952, Moffitt secured a loan from the defendant Wachovia Bank and Trust Company in the approximate amount of $1,850, and that day executed to the Bank his installment payment note in the amount of $2,846.37, covering the loan, plus insurance premiums and prepaid interest charges. The note was secured by chattel mortgage on the tractor, duly filed for registration 26 June, 1952.

On 28 August, 1952, Moffitt, admittedly being in default in the payment of his note to Wachovia Bank and Trust Company, surrendered possession of the tractor to the Bank.

On 21 February, 1953, the plaintiff instituted this action, alleging in gist: that Moffitt had failed and refused to pay any sum whatever on the purchase money note to him; that plaintiff is entitled to recover of the defendant Moffitt the full face amount of the note with interest; that the lien of his chattel mortgage is prior to that of the defendant Bank, and that therefore he is entitled to the immediate possession of the tractor as against the Bank. The tractor was seized by the Sheriff under writ of claim and delivery. However, the Bank replevied and held the tractor.

The defendant Bank by answer denied the material allegations of the complaint and set up, among others, these defenses:

1. That the plaintiff's chattel mortgage is fatally defective for failure to describe adequately the Auto Car diesel tractor.

2. That when the defendant Moffitt made application to the Bank for the loan, to be secured by chattel mortgage on the tractor, he was accompanied by the plaintiff, who delivered to the Bank the Certificate of Title issued to him by the North Carolina Department of Motor Vehicles covering the tractor; that the plaintiff falsely represented to the Bank that there were no liens against the tractor, and executed an assignment, affidavit, and warranty that there were no liens and encumbrances on the vehicle, and delivered the Certificate of Title to the Bank; that the representations and warranties were made by the plaintiff for the purpose of deceiving the Bank and inducing it to deal with Moffitt; that in reliance upon the false representations and warranties of the plaintiff the Bank was induced to make the chattel mortgage loan to Moffitt; and that by reason of the plaintiff's representations that there were no liens or encumbrances against the vehicle the plaintiff is estopped from asserting that the lien of his chattel mortgage is prior to that of the Bank.

3. That at the time Moffitt applied for the loan from Wachovia Bank and Trust Company, the first mortgage lien debt of Carolina Garage was in default; that shortly before the Wachovia loan to Moffitt was closed, Peek issued to Carolina Garage his check (on the First National Bank and Trust Company, of Asheville) for the entire balance due on its mortgage; that at the time the check was made, Peek knew he did not have sufficient funds on deposit to cover the check; that at that time he intended to obtain funds from Wachovia with which to cover the check; that when the check reached the drawee bank, it was dishonored for lack of funds and Peek was so notified; that a few days later when the loan was made by the Wachovia Bank to Moffitt, the proceeds of the loan were turned over to Peek, who in turn deposited same to his credit in the First National Bank and Trust Company, and by such deposit and use of the proceeds of the bank loan the check previously issued by Peek to Carolina Garage was paid; and that by reason thereof the canceled mortgage of Carolina Garage should be and in equity is reinstated and that Wachovia Bank and Trust Company is subrogated to the rights of Carolina Garage thereunder.

The defendant Moffitt was never served with process and made no appearance. He was subpoenaed as a witness by the defendant Bank but was not found and did not testify.

At the trial below evidence was offered tending to show these facts: the execution and delivery of the three notes as described in the pleadings, and also the execution and registration, as alleged, of the chattel mortgages securing the notes; that when the tractor was sold by Peek to Moffitt, the latter agreed to pay the monthly installments due on the first mortgage held by Carolina Garage at the rate of $200 each, plus interest; that Moffitt was to make the payments to Peek, who in turn was to forward them to Carolina Garage; that he made only two payments—neither of which was "on time"; that Moffitt "got so far behind" that Peek "had to go" pay off the Carolina Garage mortgage debt. This he did on 17 June, 1952. On that date Peek went to Winston-Salem and gave Carolina Garage his check on the First National Bank and Trust Company, of Asheville, for the balance of $1,576. Next day, Carolina Garage mailed Peek the note and chattel mortgage and also the Certificate of Title issued to Peek by the North Carolina Department of Motor Vehicles, with notation written on the face of the mortgage and Certificate showing payment of the lien debt. The plaintiff Peek admitted that at the time he gave the check to the Garage he knew he did not have sufficient funds in the bank to cover the check, and that when the check reached the bank for collection two or three days later his deposit was not sufficient to cover it, and that he was so notified by the bank. That Moffitt made no payment on his purchase

money note and mortgage to the plaintiff Peek; that when Moffitt surrendered possession of the tractor to Wachovia Bank and Trust Company he owed on its note and mortgage $2,688.93, all of which was in default. That on 12 June, 1952, when Moffitt applied to Wachovia Bank and Trust Company for the loan on the tractor, the application was handled by J. C. Creed of the Bank's Time Payment Department. Creed was advised that Moffitt was obligated to pay off the balance due on the purchase money note and chattel mortgage made by Peek to Carolina Garage, and in investigating Moffitt's credit standing Creed phoned Carolina Garage to verify his information that the Garage lien was outstanding. Creed testified he also had a conversation with Peek several days after taking Moffitt's application. After the mortgage and Certificate of Title had been forwarded to Peek by Carolina Garage, Moffitt called Peek on the phone and asked him if he had the Certificate of Title. Peek replied that he did. Thereupon Peek went to meet Moffitt at the Bank, taking with him the Certificate of Title. Peek had previously "been after Moffitt for some time about some money . . . had been on him different times before that . . . he was behind in his payments . . ." They went inside the Bank together. Peek testified, "I had an idea he (Moffitt) might be getting a loan . . ." This was on 23 June, 1952. Moffitt secured the loan from Wachovia Bank that day and executed his installment note therefor, secured by chattel mortgage on the Auto Car tractor.

There is some conflict in the evidence as to the extent of Peek's participation in the events connected with the closing of the loan. Creed, who handled the application and closed the loan for the Bank, testified in substance that Peek and Moffitt came into the Bank together; that the three of them—Peek, Moffitt and Creed—were present in the office; that Peek "gave me the title." It was marked "paid" by Carolina Garage. "I asked Peek if there was any lien on the Auto Car diesel and he said there was not." Creed then filled out the printed assignment blank on the back of the Certificate of Title designated "A," after which it was executed by Peek before Miss Hollar, a notary public who was called in; that Creed then filled out the purchaser's application for new title, designated "C," on the back of the Certificate of Title, and that Moffitt executed it. The assignment as executed by Peek to Moffitt is as follows, with the parts filled in by Creed being in parentheses:

A.            ASSIGNMENT OF TITLE BY REGISTERED OWNER.

For value received, the undersigned hereby sells, assigns or transfers the vehicle described on the reverse side of this certificate unto the purchaser whose name appears below in this block, and the undersigned

PEEK v. TRUST CO.

hereby warrants the title to said vehicle and certifies that at the time of delivery the same is subject to the following named liens or encumbrances and none other:

Purchaser   (Sherman Moffitt)     Amount of lien $ _____

Street or R.F.D. (111 Middlemont)  Kind of Lien _____

Post Office  (Asheville, N. C.)    Date of Lien _____

Date of Sale  (6-23-52)            In favor of _____

                                   Address _____

Earl Peek

Signature of Seller

(59 Starnes Ave. Asheville, N. C.)

Address

All answers supplied and completely subscribed and sworn to before me this 23rd day of June 1952.   My   commission   expires 10/9/53.

Joy  Hollar

_____ (SEAL)

Notary  Public

Asheville, N. C.

Address

WARNING:   This  assignment  must not be signed unless name and address of purchaser appear above.

Defense witness Creed further testified: "The entire paragraph of Form 'A' was copied by me before Peek signed it . . . After my conversation with Moffitt and Peek I completed the transaction and gave Moffitt a check to finish the loan. . . . I did not investigate nor cause to be investigated the records of Buncombe County prior to accepting this chattel mortgage on Moffitt. . . . I knew he (Moffitt) had it (the tractor) in his possession" for two or three weeks before the application was made.  The tractor was inspected by Creed and another representative of the Bank while the loan application was pending.

Joy Hollar testified that she notarized Peek's assignment of the Certificate of Title.  She said the blanks were filled in before Peek signed and that she watched him sign the paper and then notarized it.

The plaintiff Peek testified that he met Moffitt outside the Bank and handed the Certificate of Title to him; that they then went in the Bank; that he sat down over next to the door at the entrance to the Time Payment Department; that Moffitt went on over to Creed's desk; that he did not hear any conversation between Creed and Moffitt; that they called him over to sign the title and at that time "Creed asked me if I owed anything on the tractor, and I told him I didn't. . . . I then executed the Certificate of Title.  Mr. Creed told me where to sign it . . . Q.

Did you read it or fill in the purchaser's name? (Objection—overruled) A. No, I just signed my name. . . . Q. Did any notary public take your acknowledgment . . . on that certificate of title? (Objection—overruled) A. They did not. . . . Creed and Moffitt were present at the time I wrote my name on that certificate of title. . . . After signing the certificate of title, I took my seat back. . . . where I was sitting, I was plumb across the house. . . . I did not hear any conversation between Creed and Moffitt after I signed the certificate of title. Neither Creed nor Moffitt discussed with me the terms of the loan that Moffitt was obtaining. I did not know what security Moffitt was giving the bank . . . for the loan. . . . I had an idea he might be getting a loan but I didn't know what other security he might be using instead of the truck." Cross-Examination: ". . . I waited around there all the time . . . over in front of the door . . . I wasn't expecting any money from Moffitt that day. . . . I was waiting because I went in with him, . . . thought I would wait until he finished and go back out with him. Q. I'll ask you if it is not a fact that you got that money from Moffitt there in the bank and went right over to the First National Bank and deposited it that same day so your check you had given to the Carolina Garage would be covered? A. I deposited the money,—sure. . . . I deposited the money I got from Moffitt there in the bank and went right over to the First National Bank and deposited it that same day, so that the check which I had given to the Carolina Garage would be covered. I had already received the notice, sure, as the notice was in the mail when I got back, but I had other trucks running, and had a service station, and had money coming in from two or three other sources. I didn't have to depend on what Moffitt gave me to obtain a $1,500.00 check."

Hugh M. Felder, Cashier of the First National Bank & Trust Company, Asheville, with the ledger sheet of the plaintiff Peek in hand, testified in substance that Peek's balance at the close of business on 17 June, 1952 was $1,360.05; on 21 June it was $806.34; that on 23 June there was one deposit in the sum of $1,850.85; that a check drawn by Peek for $1,576.36 and returned on 21 June for insufficient funds was paid on 25 June; that no deposit was made on 24 June; on 25 June there was a deposit of $204.27; that on 25 June at the close of business the balance was $405.72.

Other facts appear in the opinion.

The motion for judgment as of nonsuit made by the defendant Wachovia Bank and Trust Company at the close of all the evidence was denied. Exception.

The court also declined to submit the issue of subrogation as tendered by the defendant bank. Exception.

The case was submitted to the jury on the following issues, which were answered as indicated:

"1. Did the plaintiff on or before the 19th day of May, 1952, sell to the defendant Sherman Moffitt a 1948 model Auto Car, as alleged in the Complaint? Answer: YES.

"2. Did the defendant Sherman Moffitt execute and deliver to the plaintiff on or about the 19th day of May, 1952, a chattel mortgage and note covering the 1948 model Auto Car, as alleged in the Complaint? Answer: YES.

"3. What amount, if any, is Sherman Moffitt indebted to the plaintiff by reason of said note and chattel mortgage? Answer: $2,976.42.

"4. Did Sherman Moffitt execute and deliver to the defendant Wachovia Bank and Trust Co. a chattel mortgage and note covering the 1948 model Auto Car tractor on or about the 23rd day of June, 1952, as alleged in the Answer? Answer: YES.

"5. Is the plaintiff Earl Peek estopped by his conduct from asserting a lien prior to the defendant's on the Auto Car tractor in question? Answer: No.

"6. Is the plaintiff entitled to the possession of the 1948 model Auto Car tractor, as alleged in the Complaint? Answer: YES.

"7. What is the fair market value of said 1948 model Auto Car tractor as of February 21, 1953? Answer: $2,500.00."

From judgment entered on the verdict, adjudging the plaintiff entitled to the immediate possession of the Auto Car tractor and directing that it be taken by the Sheriff from the defendant Wachovia Bank and Trust Company and delivered to the plaintiff, the Bank appeals, assigning errors.

*Uzzell & Dumont for defendant Wachovia Bank and Trust Company, appellant.*

*Fisher & Fowler and Ward & Bennett for plaintiff, appellee.*

JOHNSON, J. The appellant's assignments of error raise questions relating to (1) the legal sufficiency of the description contained in the chattel mortgage made by the defendant Moffitt to the plaintiff, (2) the refusal to direct a verdict on the issue of estoppel, (3) the reception and exclusion of evidence, (4) the refusal to submit an issue of subrogation, and (5) the charge of the court. We discuss the assignments in that order.

1. *The sufficiency of the description contained in the plaintiff's chattel mortgage.*—First, the appellant urges that its motion for judgment as of nonsuit should have been allowed on the ground that the description "1948 Auto-Car (Sleeper Cab Tractor) Motor No............ .." con-

tained in the chattel mortgage sued on by the plaintiff is fatally defective. However, we are inclined to the other view. The description, when considered in connection with the evidence that Moffitt owned only one tractor unit, meets identification requirements as approved by authoritative decisions of this Court. *Motor Co. v. Motor Co.*, 197 N.C. 371, 148 S.E. 461. See also *Spivey v. Grant*, 96 N.C. 214, 2 S.E. 45. The decisions cited by the appellant are factually distinguishable.

Next, by Assignment of Error No. 35 the appellant insists that in any event the sufficiency of the evidence *aliunde* tending to identify the Auto Car tractor should have been submitted to the jury as an open question, rather than under the peremptory instruction as given in favor of the plaintiff on the second issue. The challenged instruction is in material part as follows: ". . . if you find the facts to be as all the evidence tends to show, you would answer the second issue Yes, otherwise you would answer it No." The rule is that where all the evidence bearing on an issue points in the same direction and justifies as the single inference to be drawn therefrom an answer in favor of the party having the burden of proof, an instruction to find in support of such inference if the evidence is found to be true, will be upheld. This is a peremptory instruction, as distinguished from a directed instruction. *Commercial Solvents, Inc. v. Johnson*, 235 N.C. 237, and cases cited on p. 243, 69 S.E. 2d 716, *721*. Here, all the evidence in the case tends to show that the plaintiff owned only one tractor. Hence the charge as given is free of legal error. The form of the instruction is approved by numerous decisions of this Court. See *Commercial Solvents, Inc. v. Johnson, supra*. See also *Shelby v. Lackey*, 236 N.C. 369, 72 S.E. 2d 757; *Reynolds v. Earley*, 241 N.C. 521, 85 S.E. 2d 904.

2. *The refusal to direct a verdict in favor of the defendant Bank on the issue of estoppel.* The general principles governing the operation of the doctrine of equitable estoppel as applicable to this case are set out in *Hawkins v. Finance Corp.*, 238 N.C. 174, pp. 177, 178 and 179, 77 S.E. 2d 669, 672, 673, as follows:

". . . in determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighted in the balance of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted

upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Self Help Corp. v. Brinkley*, 215 N.C. 615, 2 S.E. 2d 889; *Bank v. Winder*, 198 N.C. 18, 150 S.E. 489; *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824; 19 Am. Jur., Estoppel, Sections 42 and 46. . . .

"However, he who claims the benefit of an equitable estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection. And where the element of actual fraud is absent, the effect of an estoppel ordinarily will be denied where the party claiming it was put on inquiry as to the truth and had available the means for ascertaining it. 19 Am. Jur., Estoppel, Sec. 86."

The Bank pleaded equitable estoppel by way of affirmative defense. Therefore, on that issue the burden of proof was upon the defendant Bank. *Aldridge Motors v. Alexander*, 217 N.C. 750, 9 S.E. 2d 469. The Bank moved for a directed instruction on the issue. The motion was properly overruled. The rule is well established with us that a directed instruction in favor of the party having the burden of proof is forbidden. *McCracken v. Clark*, 235 N.C. 186, 69 S.E. 2d 184; *Haywood v. Ins. Co.*, 218 N.C. 736, 12 S.E. 2d 221. See also *Bryant v. Murray*, 239 N.C. 18, 25, 79 S.E. 2d 243, 248.

Conceding *arguendo* that the court below treated the Bank's motion as being intended as a motion for a peremptory, rather than a directed, instruction, even so, the ruling was proper. It is only when a single inference can reasonably be drawn from undisputed facts that the question of estoppel is one of law for the court to determine. *Mason v. Williams*, 53 N.C. 478; *Bank v. Winder, supra;* 19 Am. Jur., Estoppel, section 200. See also *Hawkins v. Finance Corp., supra.*

Here the evidence bearing on the issue of estoppel was conflicting and susceptible of diverse inferences. While the evidence of the defendant Bank was sufficient to justify the inference that it relied upon and was misled by the representations of the plaintiff, nevertheless other phases of the evidence justify the opposite inference.

3. *The reception and exclusion of evidence.*—By Assignments Nos. 4, 5, 6, and 16, based on exceptions bearing the same numbers, the defendant Bank urges that the trial court erred in permitting the plaintiff Peek to testify over objection that when he executed the assignment of the

Certificate of Title to Moffitt at the Bank (1) he executed it in blank, (2) he did not read it, and (3) the assignment was not notarized at the time of execution. The Bank urges that this line of testimony was violative of the parol evidence rule as tending to vary or contradict the provisions of the assignment of the Certificate of Title as executed by Peek to Moffitt. However, the rule against the admission of parol evidence to vary or contradict a written contract does not apply where the writing in respect to which it is sought to introduce parol evidence is collateral to the issue involved in the action. 32 C.J.S., Evidence, section 1011; 20 Am. Jur., Evidence, section 1142. We adhere to this well-established exception to the parol evidence rule. It is recognized and applied in numerous authoritative decisions of this Court, among which are these: *Pollock v. Wilcox,* 68 N.C. 46; *Carden v. McConnell,* 116 N.C. 875, 21 S.E. 923; *Ledford v. Emerson,* 138 N.C. 502, 51 S.E. 42; *Hall v. Giessell & Richardson,* 179 N.C. 657, 103 S.E. 392; *Chatham v. Chevrolet Co.,* 215 N.C. 88, 1 S.E. 2d 117; *Jones v. Chevrolet Co.,* 217 N.C. 693, 9 S.E. 2d 395.

In *Hall v. Giessell, supra,* at bottom of page 659, it is said: ". . . the parol evidence rule as to the contents of a written instrument, applies only to actions between parties to the writing, *and when its enforcement is the substantial cause of action . . .*" (Italics added.) The enforcement of the written assignment of the Certificate of Title made by Peek to Moffitt was in no sense an issue, substantial or otherwise, in the instant case. On the contrary, the validity of the transfer of the tractor title from Peek to Moffitt is conceded by all the parties. Indeed, both chattel mortgages in suit—the purchase money mortgage made by Moffitt to Peek and the later mortgage made by Moffitt to Wachovia Bank and Trust Company—derive their efficacy from Moffitt's ownership of the tractor, as evidenced by Peek's transfer of title to Moffitt. Therefore Peek's cause of action and the Bank's defenses, all based on chattel mortgages made by Moffitt, presuppose a valid transfer of title from Peek to Moffitt. This being so, the written assignment of the Certificate of Title and the parol evidence in respect thereto were collateral to all "substantial" issues involved in the case. And the challenged testimony of Peek, as was that of witness Creed offered *contra* by the Bank, tending to show the facts and circumstances surrounding the execution of the assignment of title and the acts, statements, and conduct of the parties at the time of the execution of the assignment, was relevant and competent as bearing on the issue of estoppel. The challenges to this testimony are without merit.

Assignments of Error Nos. 10 and 11 relate to the testimony of Peek, admitted over objection of the Bank, to the effect that he had additional income with which to cover the check he had given to Carolina Garage

in satisfaction of its first lien chattel mortgage. These assignments, standing as they do unsupported by reason, argument, or citation of authority, may be treated as abandoned by virtue of Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544, p. 563, which provides that exceptions "not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." See *S. v. Cole*, 241 N.C. 576, p. 581, 86 S.E. 2d 203, 207; *Dillingham v. Kligerman*, 235 N.C. 298, 69 S.E. 2d 500. In any event, the evidence to which these assignments relate was relevant and competent on the issue of estoppel.

Assignment of Error No. 20 relates to the refusal of the court to allow one of the defendant Bank's witnesses to answer a question propounded to him. The assignment is without merit for the reason that the record fails to show what the testimony would have been if the witness had been permitted to answer the question. It is elemental that the exclusion of testimony cannot be held prejudicial on appeal unless the appellant shows what the witness would have testified if permitted to do so. *Highway Comm. v. Black*, 239 N.C. 198, 79 S.E. 2d 778; *Goeckel v. Stokely*, 236 N.C. 604, 73 S.E. 2d 618.

The remaining assignments of error relating to evidential matters are listed in the appellant's brief as Nos. 21, 22, 23, 24, and 25, along with No. 39. All these are grouped and brought forward in the brief and argued *en masse*, without citation of authority, as relating "to the trial court's refusal to permit cross-examination on matters to which the plaintiff was permitted to testify on direct examination." However, our examination of the record discloses that none of the exceptions on which these assignments are based relate to cross-examination of the plaintiff. All of them, except Assignment No. 39, relate to direct and redirect examination of defense witnesses and have to do with the exclusion, on objection of the plaintiff, of testimony proffered by the defendant Bank. Assignment No. 39, while grouped in appellant's brief with evidential assignments, is based on an exception to the charge. It challenges the correctness of the court's statement of a factual contention of the plaintiff. Yet it nowhere appears that the defendant Bank called the error to the attention of the court at the time. This group of assignments of error, being unsupported by reason, argument, or authority as required by Rule 28, Rules of Practice in the Supreme Court (221 N.C. 544), will be treated as abandoned. *S. v. Cole, supra*. While we dispose of these assignments on procedural ground, nevertheless the exceptions to which they relate have been examined and are found to be without substantial merit.

4. *The refusal to submit the issue of subrogation.*—Subrogation is a mode of equitable relief which operates on principles of natural justice

without regard to form and independent of any contractual relation between the parties to be affected by it. Story's Equity Jurisprudence, Fourteenth Edition, Volume 2, section 706. It has been defined "as that change by which another person is put into the place of a creditor, so that the rights and securities of the creditor pass to the person who, by being subrogated to him, enters into his right. It is a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as entitled to the same rights, and indeed as constituting one and the same person with the creditor whom he succeeds." Sheldon, The Law of Subrogation, Second Edition, section 2. See also Pomeroy's Equity Jurisprudence, Fifth Edition, Volume 4, section 1211.

For present purposes it is not necessary to give a comprehensive classification of the various types of cases and situations to which the doctrine of subrogation may be applied. It suffices to point out that as a general rule one who furnishes money for the purpose of paying off an encumbrance on real or personal property, at the instance either of the owner of the property or of the holder of the encumbrance, either upon the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, will be subrogated to the rights of the prior lienholder as against the holder of an intervening lien, of which the lender was excusably ignorant. *Wilkins v. Gibson,* 113 Ga. 31, 38 S.E. 374, 84 Am. St. Rep. 204; *Bankers' Loan & Investment Co. v. Hornish,* 94 Va. 608, 27 S.E. 459; *Huggins v. Fitzpatrick,* 102 W. Va. 224, 135 S.E. 19; Pomeroy's Equity Jurisprudence, Fifth Edition, Volume 4, section 1212; Annotation, 70 A.L.R. 1396. See also *Boney v. Insurance Co.,* 213 N.C. 563, 567, 197 S.E. 122; 50 Am. Jur., Subrogation, sections 107, 108, and 109.

However, one who loans money which is used in paying off a mortgage or encumbrance is not entitled, from that circumstance alone, to be subrogated to the rights of the holder of the encumbrance. *Price v. Courtney,* 87 Mo. 387, 56 Am. Rep. 453; *Carolina Interstate Bldg. & Loan Ass'n v. Black,* 119 N.C. 323, 25 S.E. 975; *Kline v. Ragland,* 47 Ark. 111, 14 S.W. 474. See also *Seeley v. Bacon* (N. J. Eq.), 34 Atl. 139. Consequently, the mere fact that the proceeds of a later mortgage are applied to the discharge of a prior one does not, as a rule, entitle the mortgagee therein to be subrogated to the rights of the prior mortgagee. *Ayers v. Staley* (N. J. Eq.), 18 Atl. 1046; *Bradshaw v. Van Valkenburg,* 97 Tenn. 316, 37 S.W. 88; Annotation: 99 Am. St. Rep. 474, p. 513. In order to invoke the equitable remedy of subrogation "it is necessary

both that the money should have been advanced for the purpose of discharging the prior encumbrance, and that it should actually have been so applied." Sheldon, the Law of Subrogation, Second Edition, section 8.

In the case at hand there is neither allegation nor proof that the Wachovia loan was made for the purpose of discharging the prior lien held by Carolina Garage. True, it is alleged, and the evidence discloses, that Peek secured its discharge by the issuance of a worthless check, which was dishonored when presented for payment and not paid until the proceeds of the Wachovia loan to Moffitt were turned over by him to Peek, who deposited them to his credit, and thereupon the worthless check given in discharge of the lien debt was paid. This line of evidence offered by the defendant Bank is sufficient to support the inference that the proceeds of the Wachovia loan to Moffitt were actually applied to the discharge of the prior mortgage held by Carolina Garage. However, the defendant Bank, having failed to show that its loan moneys were advanced with the intent and for the purpose of extinguishing the prior encumbrance, has failed to bring itself within the principles of the doctrine of subrogation. On the record as presented, nothing more than a case of ordinary borrowing and lending has been made to appear. This being so, the court below properly declined to submit the issue of subrogation.

5. *Assignments of error relating to the charge.*—Here the defendant Bank groups and brings forward Assignments Nos. 34 to 49, inclusive.

Assignment No. 34 is based on an exception to this portion of the charge: "Now, the law does not prohibit the sale of a motor vehicle without transfer and delivery of certificate of registration of title; in other words, one can sell a motor vehicle on one day and the title pass, and deliver or transfer the paper certificate of title on a later date." It is nowhere pointed out wherein the court erred in so instructing the jury. The only argument advanced in the brief in connection with the assignment is that the court failed "to explain the law arising on the evidence in relation to the Motor Vehicle Acts (Ch. 236, Public Laws of 1923, and Ch. 407, Public Laws of 1937)," in violation of the provisions of G.S. 1-180. This contention is not only broadside but is unsupported by exception or assignment of error. It is elemental that an exception to an excerpt from the charge ordinarily does not challenge the omission of the court to charge further on the same or another aspect of the case. *Karpf v. Adams; Runyon v. Adams,* 237 N.C. 106, 74 S.E. 2d 325. See headnote 10. Thus, the exception to the excerpt from the charge as noted, standing as it does unsupported by argument or citation of authority, is deemed abandoned by virtue of Rule 28, Rules of Practice in the Supreme Court, *supra; S. v. Cole, supra.* While this is

so, it is observed that the instruction as given is precisely in accord with the decision in *Corporation v. Motor Co.*, 190 N.C. 157, 129 S.E. 414.

Assignment No. 35, relating to the legal sufficiency of the description contained in the plaintiff's chattel mortgage, challenges the peremptory instruction given in favor of the plaintiff on the second issue. This assignment has been discussed and overruled.

Assignments Nos. 36, 37, and 38 are based on exceptions to excerpts from the charge and will be discussed together. Assignment No. 36 is based on an exception to an instruction of law exactly as is stated in *Hawkins v. Finance Co.*, *supra* (238 N.C. 174), at middle of page 179; whereas Assignments Nos. 37 and 38 are based on exceptions to the statement of factual contentions, and it nowhere appears that the court's attention was called to any misstatement at the time. Here, again, the defendant gives no reason or argument or citation of authority in support of any of these three assignments. Instead, the Bank in its brief attempts to challenge the omission of the court to charge further on other aspects of the case. It necessarily follows that the exceptions as noted and the assignments of error based thereon will be treated as abandoned (*S. v. Cole, supra*), and the argument made in the appellant's brief to the effect that the court erred in failing to charge further on other aspects of the case, being unsupported by exception or assignment of error, will be disregarded. *Karpf v. Adams, supra* (237 N.C. 106).

While Assignments Nos. 39, 40, 44, 46, 47, 48, and 49 are brought forward in the brief, they are unsupported by argument or citation of authority. They are treated as abandoned. *S. v. Cole, supra.*

Assignments Nos. 41 and 43 are discussed together in the appellant's brief and will be treated the same way here. By No. 41 the defendant Bank assigns error in the following statement of the plaintiff's contention based on his testimony that he did not read the assignment of title as executed by him: "The plaintiff says and contends that, according to the plaintiff's testimony, he did not read it; that if he had read it, he would have assumed it referred to liens against him and not in his favor." Assignment No. 43 is based on the following exceptions, duly made as to form: "That the court did not and should have instructed the jury that the plaintiff was charged with the knowledge of the contents of the certificate of title which he executed at the bank's office and that if they should find that he warranted the title as contained therein to Moffitt, that he would thereby be estopped to controvert said warranty." We see nothing objectionable in the instruction to which Assignment No. 41 relates. The court was charging on the issue of estoppel and was giving two contentions of the plaintiff. In the first, refer-

ence was made to the plaintiff's testimony that he did not read the assignment of title. We have previously discussed the competency of this testimony and concluded it was properly received as bearing on the issue of estoppel. This being so, error may not be predicated on the court's statement of contention embodying the gist of the testimony. As to the second contention—that if the plaintiff had read the assignment "he would have assumed it referred to liens against him and not in his favor"—it is enough to say that while the contention is hypothetical, it is not perceived that it was prejudicial to the appellant. This is so for the reason that conceding, as we may, that the plaintiff was charged with notice of the contents of the printed form assignment and warranty which he signed, even so, the reference to liens in the printed form does in fact relate to liens against the assignor and not in his favor. And this being so, it necessarily follows that the printed form warranty of title executed by the plaintiff in assigning title to Moffitt does not, nothing else appearing, estop plaintiff from asserting the priority of his chattel mortgage. Therefore, there is no merit in the appellant's contention, based on Assignment No. 43, that the court erred in failing to charge that the plaintiff's execution of the form assignment and warranty appearing on the back of the Certificate of Title was sufficient to estop the plaintiff. On the contrary, any such positive instruction would have been erroneous. Assignments Nos. 41 and 43 are overruled.

Assignment No. 42 is based on this exception: "The Court did not and should have instructed the jury that as the plaintiff admitted he knew when he gave the Carolina Garage, Inc., his check in payment of the mortgage held by them that he did not have sufficient funds in the bank to cover said check that this would not constitute a payment of said mortgage and that plaintiff should have advised the defendant Wachovia Bank and Trust Company of this and other facts at the time he executed the certificate of title in the bank's offices." By this assignment the defendant Bank insists that on the basis of Peek's testimony to the effect that he did not have sufficient funds on deposit to cover his check made to Carolina Garage, the court should have instructed the jury (1) that the Carolina Garage mortgage was outstanding and unpaid and (2) that Peek should have so informed the Bank's representative Creed. No such positive instruction was justified by the evidence in the case.

True, as between the parties, the rule is that in the absence of a contrary agreement the delivery and acceptance of a check is not payment until the check is paid. *Wilson v. Finance Co.,* 239 N.C. 349, 79 S.E. 2d 908. See also *Hayworth v. Ins. Co.,* 190 N.C. 757, 130 S.E. 612; *Moore & Dawson v. Construction Co.,* 196 N.C. 142, 144 S.E. 692. *Cf. South*

*v. Sisk*, 205 N.C. 655, 172 S.E. 193. Also, on failure of the consideration for which a release or satisfaction of a mortgage was executed, it may generally be set aside and the lien of the canceled mortgage restored to its original priority as against the mortgagor, a volunteer, or one chargeable with knowledge of the rights and equities of the mortgagee; but such priority may not be re-established as against a *bona fide* purchaser or encumbrancer who has acquired an interest in or lien upon the property in reliance upon the entry of satisfaction. *McConnell v. American National Bank*, 59 Ind. App. 319, 103 N.E. 809; 59 C.J.S., Mortgages, section 283 (d), p. 353.

Here, all the evidence tends to show that the defendant Bank occupied the position of a *bona fide* encumbrancer whose lien was taken in reliance upon the entry of satisfaction of the prior Carolina Garage mortgage. Besides, the garage mortgage debt stands paid and satisfied, and no attempt is made by Peek, whose liability thereon as against Moffitt was that of a surety, to have it reinstated in his favor as against either Moffitt or the defendant Bank. Also, it is noted that the evidence is conflicting in respect to whether Peek had sufficient outside income with which to pay the check he gave Carolina Garage. Therefore, in no aspect of the case was the defendant Bank entitled to have the trial court tell the jury it was Peek's positive duty to have informed the Bank's representative Creed that the check was outstanding and unpaid. Such instruction would have been violative of G.S. 1-180 and prejudicial to the plaintiff.

The fact that Peek failed to disclose to the Bank that his check to Carolina Garage was outstanding and unpaid at most was a subordinate factor relating to his conduct and demeanor to be considered by the jury along with other facts and circumstances in evidence as bearing on the issue of estoppel. If the Bank desired this subordinate phase of the case to be specially presented to the jury, it should have requested the judge to do so by prayer for special instruction tendered in apt time. No such request was made. When a judge has "charged generally on the essential features of the case, if a litigant desires that some subordinate feature of the cause or some particular phase of the testimony shall be more fully explained, he should call the attention of the court to it by prayers for instructions or other proper procedure; . . ." *S. v. Merrick*, 171 N.C. 788, bot. p. 795, 88 S.E. 501. And where this is not done, objection may not be raised for the first time after trial. *Hauser v. Furniture Co.*, 174 N.C. 463, 93 S.E. 961; *Chestnut v. Sutton*, 207 N.C. 256, 176 S.E. 743; *Bryant v. Carrier*, 214 N.C. 191, 198 S.E. 619; McIntosh, N. C. Practice and Procedure, p. 634.

Assignment No. 45 is that the court erred in failing to instruct the jury "as to the elements of fraud in the plaintiff's acts and omissions

in dealing with the defendant Wachovia Bank and Trust Company and the effect of such fraudulent conduct and omissions." This assignment of error is without merit. No issue of fraud was tendered, and there is no exception for failure to submit the issue of fraud. *In re Will of Beard,* 202 N.C. 661, 163 S.E. 748. The phases of the evidence tending to show elements of fraud were encompassed by the issue of estoppel. This, no doubt, was favorable to the defendant Bank. At any rate, such was the theory of the trial. And the rule is that the theory upon which a case is tried in the lower court must prevail in considering the appeal and in interpreting the record and determining the validity of the exceptions. *Caddell v. Caddell,* 236 N.C. 686, 73 S.E. 2d 923; *Thrift Corp. v. Guthrie,* 227 N.C. 431, 42 S.E. 2d 601. However, our examination of the record discloses that the trial court in charging on the issue of estoppel presented to the jury all essential phases of the evidence bearing on the question of fraud and deception and properly instructed the jury in reference thereto. If the defendant wished further elaboration on subordinate features, it should have made timely requests therefor. *Chestnut v. Sutton, supra.*

In the trial we find

No error.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.