JACQUELINE BREWER LONG v. THE UNIVERSITY OF NORTH CAROLINA AT WILMINGTON

No. COA94-1279

(Filed 19 September 1995)

1. **Colleges and Universities § 13 (NCI4th)— no implied contract for admission to nursing school—alleged promises from faculty—no actual or apparent authority**

   The evidence was insufficient to raise a genuine issue of fact as to whether there existed an implied contract between defendant university and plaintiff pre-nursing student that she would be admitted into the school of nursing upon her successful completion of the minimum requirements for admission, even if faculty members assured her that she would be admitted, since there was no evidence that those faculty members acted with the actual or apparent authority of the university; the handbook was unambiguous in stating that there was an application process and that admission depended upon recommendation by the committee for student affairs of the school and approval of the nursing faculty; and the university made no false representation to plaintiff.

   **Am Jur 2d, Colleges and Universities § 17.**

2. **Estoppel § 18 (NCI4th)— denial of admission to nursing school—representations of faculty advisors—university not estopped**

   Defendant university was not estopped to deny plaintiff student admission into its school of nursing upon her completion of the minimum requirements for admission, even if her faculty advisors assured her she would be admitted upon her completion of those requirements, where plaintiff's forecast of evidence showed that the school of nursing had an application process separate

from that of the university and thus revealed that plaintiff was misled through her own want of reasonable care and circumspection.

**Am Jur 2d, Estoppel and Waiver §§ 26 et seq.**

Appeal by plaintiff from judgment entered 2 September 1994 in New Hanover Superior Court by Judge Ernest B. Fullwood. Heard in the Court of Appeals 24 August 1995.

*Shipman & Lea, by Gary K. Shipman, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Associate Attorney General Thomas O. Lawton III, for defendant-appellee.*

GREENE, Judge.

Jacqueline Brewer Long (plaintiff) appeals from the trial court's order entering summary judgment in favor of The University of North Carolina at Wilmington (the University).

The record shows that plaintiff attended the University as a pre-nursing student from the fall of 1990 until the spring of 1993, and sought admission into the defendant's School of Nursing—Bachelor of Science Degree Program (the School) in 1993. On 26 March 1993, plaintiff was denied admission to the School, and she brought this suit against the University, a corporate entity, on 21 May 1993, alleging breach of contract, created by representations made by the University and the School that her admission to the School was guaranteed if she completed published minimum requirements and, alleging that the School was estopped to deny her admission.

The evidence included the University's handbook which states that "Admission to the Bachelor of Science degree programs in Nursing . . . requires application to and acceptance by the School of Nursing . . . in addition to acceptance by the university." The handbook also sets forth the minimum requirements for admission to the School, including a "[m]inimum overall cumulative GPA of 2.5" and a "[m]inimum grade of 'C' " in certain required courses. The handbook further states "[a]dmission to the School of Nursing is dependent on university admission, recommendation of the Committee for Student Affairs of the School of Nursing, approval of the nursing faculty and meeting admission criteria, including the completion of required prerequisite courses." The student handbook for the School provides "[a]dmission to the School of Nursing is competitive. Enrolling stu-

dents will be selected from all applicants meeting the following minimum requirements." The minimum requirements set forth in the handbook for the School are the same as those in the University's handbook. There is no dispute that the School of Nursing Faculty Bylaws, which appear in the record, do not grant any member of the faculty the authority to make promises to students concerning admission to the School.

The record further reveals, however, that from 1990 through 1993, plaintiff was "repeatedly assured [by three of her faculty advisors] that [her] performance was such that [she] would be accepted into [the School] without any complications." Furthermore, although the minimum grade point average set forth in the undergraduate catalogue is a 2.5, one of plaintiff's advisors suggested that plaintiff raise her grade point average to a 2.6 or 2.7 to be "quite assured" of admission to the School. Although plaintiff states that she was never told that she may have difficulty gaining admission to the School, Marlene Rosenkoetter, professor and Dean of the School, stated that in January 1993, she informed all pre-nursing students that only "40, 50, or 60 of the approximately 120 students in the class . . . would be admitted" to the School and she advised that the "applicants should consider their options."

There is no dispute that plaintiff fulfilled all of the minimum requirements for admission into the School, including achieving a cumulative grade point average of 2.873. After the School's Committee for Student Affairs evaluated the applications to the School, however, it found that there were "77 qualified applicants for the maximum of 60 positions available in the junior class whose cumulative grade point averages (GPAs) were higher than Ms. Long's." Accordingly, plaintiff was not recommended by the Committee for admission to the School.

---

[1] The dispositive issue is whether plaintiff's faculty advisors had either actual or apparent authority to guarantee admission to the School.

The plaintiff contends that the evidence, considered in the light most favorable to her, raises a genuine issue of fact as to whether there existed an implied contract between the University and the plaintiff that she would be admitted into the School upon her successful completion of the minimum requirements for admission. Assuming that the relationship between a student and a university

can be contractual in nature, *see Elliott v. Duke University*, 66 N.C. App. 590, 595-96, 311 S.E.2d 632, 636, *disc. rev. denied*, 311 N.C. 754, 321 S.E.2d 132 (1984) (using contract analysis in suit by student not admitted to university program); *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1977), *cert. denied*, 435 U.S. 971, 56 L. Ed. 2d 62 (1978); *Doherty v. Southern College of Optometry*, 862 F.2d 570, 577 (1988), *cert. denied*, 493 U.S. 810, 107 L. Ed. 2d 22 (1989), the evidence in this case does not support a finding that there was a contract between the parties that insured the plaintiff's admission into the School upon successful completion of the minimum requirements. Even assuming that the faculty members assured the plaintiff that she would be admitted upon successful completion of the minimum requirements, there is no evidence in this record that those faculty members acted with the actual or apparent authority of the University. *Elliott*, 66 N.C. App. at 598-99, 311 S.E.2d at 637-38 (principal not bound by agent unless agent acts with apparent or actual authority). The handbook is unambiguous in stating that there is an application process and that admission to the School depends upon recommendation by the committee for student affairs of the School and approval of the nursing faculty. There is no evidence contradicting the handbook. Thus, any argument that the plaintiff could reasonably have believed that the faculty members with whom she spoke had apparent authority to guarantee her admission is simply not supported in this record.

[2] Similarly, because plaintiff's forecast of the evidence does not reveal that the University made any false representation and because plaintiff's own evidence, that the School had an application process separate from that of the University which all those wishing to attend the School must complete and pass, reveals that plaintiff was misled "through [her] own want of reasonable care and circumspection," estoppel does not apply. *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 11-12, 86 S.E.2d 745, 753 (1955).

Affirmed.

Judges WYNN and MARTIN, John C., concur.