IN THE SUPREME COURT OF NORTH CAROLINA

No. 14PA23

Filed 23 May 2024

MIDFIRST BANK

v.

BETTY J. BROWN and MICHELLE ANDERSON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision
of the Court of Appeals, 286 N.C. App. 664 (2022), reversing an order entered on 19
July 2021 by Judge Karen Eady-Williams in Superior Court, Mecklenburg County,
and remanding the case. Heard in the Supreme Court on 14 February 2024.

*Alexander Ricks, PLLC, by Benjamin F. Leighton, Roy H. Michaux Jr., Ryan
P. Hoffman, and David Q. McAdams, for plaintiff-appellant.*

*The Green Firm, PLLC, by Bonnie Keith Green; and Wesley L. Deaton for
defendant-appellees.*

BARRINGER, Justice.

This Court considers whether the Court of Appeals erred by reversing the trial
court's order denying summary judgment for defendants, granting summary
judgment to plaintiff, and remanding the case to the trial court. Upon careful review,
we hold that the Court of Appeals erred. Therefore, we reverse the Court of Appeals'
decision and remand to that court to further remand to the trial court for proceedings
not inconsistent with this opinion.

## I.    Factual Background

Defendant Betty J. Brown took title to her Charlotte, North Carolina, property (the subject property) in 2000. In 2004, Brown obtained a loan in the amount of $265,100.00 from First Horizon Home Loan Corporation (First Horizon) secured by a deed of trust recorded with the Mecklenburg County Register of Deeds.

In 2010, a South Carolina judgment was entered against Brown. The judgment was domesticated by United General Title Insurance Company (United) and recorded in the public record of the Mecklenburg County Clerk of Superior Court's office in July 2014.

In 2016, Brown refinanced the First Horizon loan by mortgaging the subject property with Nationstar Mortgage LLC (Nationstar). Pursuant to the express terms of the refinance agreement, Nationstar paid off the remainder of Brown's loan with First Horizon in the amount of $219,873.01. Brown signed an Owner's Affidavit indicating there were no outstanding liens. The deed of trust for Brown's loan with Nationstar was recorded with the Mecklenburg County Register of Deeds in August 2016, after the 2010 South Carolina judgment. Plaintiff MidFirst Bank is Nationstar's successor in interest for the 2016 loan.

In 2019, United began enforcement proceedings against Brown in North Carolina in order to collect the 2010 South Carolina judgment. The Mecklenburg County Sheriff's Office seized the subject property in July 2019, and an execution sale was held pursuant to N.C.G.S. § 1-339.68. No bids were placed at the initial execution

sale, held in August 2019. A second execution sale was held a week later. Brown's daughter, defendant Michelle Anderson, placed a successful upset bid of $102,900.00 at the second execution sale in August 2019 in satisfaction of the United judgment. In September 2019, the Mecklenburg County Clerk of Superior Court filed a confirmation of sale of the subject property to Anderson. Brown has continued to reside in the subject property.[1]

## II.    Procedural Background

Plaintiff's complaint, filed on 22 April 2020, sought to quiet title via declaratory judgment. Plaintiff alleged that the Nationstar deed of trust still encumbers the subject property even after the execution sale was conducted pursuant to N.C.G.S. § 1-339.68, despite the Nationstar deed of trust being recorded after the United lien.

In the alternative, plaintiff alleged that the doctrine of equitable subrogation applies to subrogate Nationstar to the rights and priorities of the First Horizon deed of trust. Specifically, plaintiff alleged that Brown mortgaged the subject property to Nationstar for the purpose of paying off the First Horizon loan, and Nationstar did so. Therefore, plaintiff alleged that as Nationstar's successor in interest, it should be equitably subrogated into First Horizon's priority position, thus continuing to

---

[1] At oral argument, plaintiff argued the equities of the circumstance, including the fact that "Appellee Brown continues to reside at the property, she admits she never stopped living there." Oral Argument at 26:30, *MidFirst Bank v. Brown* (No. 14PA23) (Feb. 14, 2024). This fact was not contested by defendants, and so is conceded. It is interesting to note that there are no *innocent* third-party purchasers for value involved in this case.

encumber the property after the execution sale.

Defendants and plaintiff filed cross motions for summary judgment. The trial court entered an order granting plaintiff's motion for summary judgment and denying defendants' motion for the same. Defendants filed a notice of appeal from the trial court's order.

On appeal, the Court of Appeals held that because the Nationstar lien became effective on 12 September 2016, after the United judgment was domesticated and recorded in Mecklenburg County in 2014, the Nationstar lien was extinguished by the execution sale in accordance with N.C.G.S. § 1-339.68(b). *MidFirst Bank v. Brown*, 286 N.C. App. 664, 668–69 (2022). Under the statute, "[a]ny real property sold under execution remains subject to all liens which became effective prior to the lien of the judgment pursuant to which the sale is held, in the same manner and to the same extent as if no such sale had been held." N.C.G.S. § 1-339.68(b) (2023).

Applying the principles of *expressio unius est exclusio alterius*, the Court of Appeals held that under subsection 1-339.68(b), a property sold at an execution sale is not subject to liens that have come into effect after the lien of the executed judgment pursuant to which the sale is held. *MidFirst Bank*, 286 N.C. App. at 668. The plaintiff disagrees. This issue was not addressed in plaintiff's petition for discretionary review and is not before this Court. Accordingly, unless the doctrine of equitable subrogation applies, the subject property is no longer encumbered by the Nationstar lien after Anderson purchased it at the execution sale to help her mother.

The Court of Appeals further held that the doctrine of equitable subrogation was not available to plaintiff, because plaintiff was not "excusably ignorant" of the publicly recorded United lien, relying on *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 15 (1955). *Id.* at 670–71, 673.

Plaintiff filed a petition for discretionary review with this Court seeking review of the issue of equitable subrogation. This Court allowed the petition pursuant to N.C.G.S. § 7A-31.

### III.    Standard of Review

We review an appeal from summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573 (2008). Summary judgment is appropriate when the record shows that there is no genuine issue of material fact. *Id.* Evidence presented on a motion for summary judgment is to be viewed in the light most favorable to the nonmovant. *Id.*

### IV.    Analysis

This Court considers whether the Court of Appeals erred by reversing the trial court's order granting summary judgment in favor of plaintiff. We hold that the Court of Appeals erred by applying the incorrect standard regarding equitable subrogation, committing an error of law. Therefore, we reverse the decision of the Court of Appeals and remand the case to the Court of Appeals to be remanded to the trial court.

The Court of Appeals appears to correctly note that the State's "equitable subrogation precedent has [not] produced a bright-line rule" for when equitable subrogation is appropriate. *MidFirst Bank*, 286 N.C. App. at 672. The Court of

Appeals further explained that equitable subrogation is "a fact-intensive inquiry that depends on the specific circumstances of each case." *Id.*

The Court of Appeals erred, however, when it cited *Peek* as "[t]he earliest case in North Carolina to discuss the doctrine of equitable subrogation." *Id.* at 670 (citing *Peek*, 242 N.C. at 15). The Court of Appeals cited to dicta within *Peek* as the general rule regarding equitable subrogation in North Carolina: that when one

> furnishes money for the purpose of paying off an
> encumbrance on real or personal property, at the instance
> either of the owner of the property or of the holder of the
> encumbrance, either upon the express understanding or
> under circumstances from which an understanding will be
> implied, that the advance made is to be secured by a first
> lien on the property, will be subrogated to the rights of the
> prior lienholder as against the holder of an intervening
> lien, of which the lender was *excusably ignorant*.

*Id.* at 671 (emphasis added) (quoting *Peek*, 242 N.C. at 15). The Court of Appeals held that plaintiff "cannot claim excusable ignorance of [the] existence" of the publicly recorded United judgment. *Id.* at 673. Accordingly, the Court of Appeals reversed the trial court's order, holding that defendants were entitled to summary judgment.

Reliance on *Peek* was error because it failed to recognize *Wallace v. Benner*, 200 N.C. 124 (1931), which provides the general rule for the application of equitable subrogation in this State. This Court has made it clear that "the rule [of equitable subrogation] is settled":

> [W]here money is expressly advanced in order to
> extinguish a prior encumbrance, and is used for this
> purpose, . . . the lender or mortgagee may be subrogated to
> the rights of the prior encumbrancer whose claim he has

satisfied . . . . Also, if the money is advanced to a debtor to discharge an existing first mortgage upon his property, and in pursuance of an agreement that the lender is to have a first lien upon the property for the repayment of the sum loaned, *the lender is entitled, as against a junior encumbrancer, to be treated as the assignee of the first mortgage which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender, and to prevent the junior encumbrance from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties.*

. . . .

The exceptions to the general rule to the doctrine of [equitable] subrogation: (1) [t]he relief is not granted to a volunteer; (2) nor where the party claiming relief is guilty of *culpable negligence*; (3) nor where to grant relief will operate to the prejudice of the junior lien holder.

*Wallace*, 200 N.C. at 131–32 (extraneity omitted) (emphases added).

Here, it is undisputed that the 2016 Nationstar loan was provided to Brown on the express condition that it be used to pay off the 2004 First Horizon loan and that Nationstar did so. When the judgment was recorded in North Carolina in 2014, United's judgment took its place as an encumbrance junior to First Horizon. *See* N.C.G.S. § 47-18(a) (2023) (North Carolina's pure race recording statute); *Jones v. Currie*, 190 N.C. 260, 263 (1925) (docketing is "necessary to create and prolong the lien thus acquired, for the benefit of the creditor against subsequent liens, encumbrances and conveyances of the same property" (quoting *Lytle v. Lytle*, 94 N.C. 683, 686 (1886))).

Without application of equitable subrogation, United, as a junior lienholder,

would be "raised . . . to the dignity of a first lien, contrary to the intention of the parties." *Wallace*, 200 N.C. at 131 (quoting R.C.L. § 24, 1340–41). As an initial matter, as the payoff of the First Horizon loan was an express condition of the refinancing loan, Nationstar is not a volunteer.[2] *See id.* In analyzing the third exception, the trial court should consider that application of equitable subrogation "leaves the inferior lienor[, United,] in his former position." *Id.* at 132 (quoting 25 R.C.L. § 24, 1340–41). In fact, here, United's lien has been satisfied. Generally, a trial court should consider and take into account facts regarding potential prejudices to the junior lienholder, such as the principal amount of the loan to be subrogated as compared to the previously prioritized loan, any longer or shorter maturity date or amortization schedule of the loan, and any material differences in interest rates, among other relevant considerations.[3]

The second exception to the general rule requires a determination as to whether plaintiff was "culpably negligent" in its failure to be aware of the publicly recorded United lien and the resulting displacement of their intended and understood first-place lien priority. When the *Wallace* Court published its opinion, Black's Law Dictionary defined culpable as "[b]lamable; censurable; . . . connotes fault." *Culpable*,

---

[2] A volunteer is one who "pays off or loans money to pay off an incumbrance without taking an assignment thereof, and without an agreement for substitution." 25 R.C.L. § 22, 1337.

[3] Here, plaintiff has conceded that it only seeks equitable subrogation for the amount paid by Nationstar to satisfy the First Horizon loan. Oral Argument at 23:21, *MidFirst Bank v. Brown* (No. 14PA23) (Feb. 14, 2024).

Black's Law Dictionary (2d ed. 1910). Further, Black's Law Dictionary defined culpable negligence as a "[f]ailure to exercise that degree of care rendered appropriate by the particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted." *Culpable negligence*, Black's Law Dictionary (2d ed. 1910).

Through its fact-intensive inquiry, a fact-finder should seek to determine who is "[b]lamable; censurable; . . . [at] fault." *See Culpable*, Black's Law Dictionary (2d ed. 1910). Thus, the inquiry becomes: throughout the process of agreeing to refinance and then, in fact, satisfying Brown's first mortgage with First Horizon, did Nationstar act with the degree of care of a lender of ordinary prudence in *that circumstance*?

"The observance of [docketing] is regarded as so important to subsequent purchasers and mortgagees that, wherever the system of docketing [is at issue], a very strict compliance with its provisions in every respect is required." *Jones*, 190 N.C. at 263–64 (quoting *Holman v. Miller*, 103 N.C. 119, 120 (1889)). It is extremely concerning that plaintiff has not produced evidence that either a title examination was conducted or that a credit report was obtained. However, the record reveals that Brown signed an Owners Affidavit attesting, *inter alia*, that "there is no person, firm, corporation or governmental authority entitled to any claim or lien against said property." It is undisputed that the United lien was publicly recorded. Additionally, the record reveals the extremely unique facts that Anderson, Brown's daughter, purchased the subject property at the execution sale for $102,900.00, an amount far

less than the Nationstar lien owed by Brown, $282,865.00. Moreover, but for the application of equitable subrogation, Brown continues to occupy the property—only now without any enforceable mortgage lien. Considering all the facts at hand, the trial court's task is to balance the equities.

## V.    Conclusion

Whether Nationstar was culpably negligent is a fact-intensive inquiry that depends on the specific circumstances at hand. Considering the extremely unique facts of this case, it is for the fact-finder to determine which party is most "blamable." *See Culpable*, Black's Law Dictionary (2d ed. 1910). Given that this Court is not a fact-finding Court, we cannot properly answer this question. Under the extremely unique circumstances of this case, the trial court should utilize broad discretion to obtain the necessary information to determine whether there is a genuine issue of material fact. For the reasons stated above, we reverse the decision of the Court of Appeals and remand to the trial court for reassessment under the *Wallace* standard of culpable negligence.

We reverse the decision of the Court of Appeals and remand to the Court of Appeals for further remand to the trial court for application of the correct legal standard.

REVERSED AND REMANDED.