IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-788

No. COA22-283

Filed 6 December 2022

Mecklenburg County, No. 20 CVS 6129

MIDFIRST BANK, Plaintiff,

v.

BETTY J. BROWN and MICHELLE ANDERSON, Defendants.

Appeal by Defendants from order entered 19 July 2021 by Judge Karen Eady-Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 October 2022.

> *The Green Firm, PLLC, by Bonnie Keith Green, and The Deaton Law Firm, PLLC, by Wesley L. Deaton, for Defendants-Appellants.*

> *Alexander Ricks PLLC, by Benjamin F. Leighton, Roy H. Michaux, Jr., Ryan P. Hoffman, and David Q. McAdams, for Plaintiff-Appellee.*

JACKSON, Judge.

Betty J. Brown and Michelle Anderson (collectively "Defendants") appeal from the trial court's order denying summary judgment for Defendants and granting summary judgment in favor of Midfirst Bank ("Plaintiff"). For the reasons detailed below, we reverse the order of the trial court and remand for entry of summary judgment in Defendants' favor.

## I.    Background

¶ 2        In 2000, Ms. Brown purchased her home, the property that is the subject of the litigation in this matter, in Charlotte, North Carolina. Ms. Brown obtained a loan from First Horizon Home Loan Corporation for the property on 26 March 2004. The deed of trust for this loan was recorded in the Mecklenburg County Register of Deeds.

¶ 3        On 21 January 2010, judgment was entered against Ms. Brown in Charleston County, South Carolina, in a matter unrelated to the case before us. This judgment, in the amount of $114,812.35 including post-judgment interest, was domesticated by United General Title Insurance Company in North Carolina pursuant to N.C. Gen. Stat. § 1C-1703 and filed in the Office of the Clerk of Mecklenburg County Superior Court on 15 July 2014.

¶ 4        In August of 2016, Ms. Brown refinanced her First Horizon loan. Nationstar Mortgage LLC made a loan to Ms. Brown, paying off the First Horizon loan. Nationstar recorded the deed of trust for this loan with the Mecklenburg County Register of Deeds. Nationstar recorded satisfaction of the First Horizon loan on 12 September 2016. Plaintiff is Nationstar's successor in interest for the August 2016 loan made to Ms. Brown.

¶ 5        In 2019, United General began enforcement proceedings in North Carolina for the 2010 judgment against Ms. Brown. On 19 July 2019, the Mecklenburg County Sheriff's Office levied the judgment against Ms. Brown's property. An initial foreclosure sale was held on 12 August 2019. The sale was postponed for one week

because there were no bids. A second sale was held on 19 August 2019, where First American Title Insurance Company placed a high bid of $98,000.00. On 22 August 2019, after pooling together funds provided by relatives and withdrawn from her and her husband's retirement and savings accounts, Ms. Brown's daughter, Ms. Anderson, placed an upset bid of $102,900.00, with the intention of having Ms. Brown remain living at the property if the bid was successful. No subsequent bids were placed to upset Ms. Anderson's bid, and the Clerk of Mecklenburg County Superior Court filed a confirmation of sale on 4 September 2019.

¶ 6     On 22 April 2020, Plaintiff filed its complaint seeking to quiet title by way of a declaratory judgment asking the court to rule that the Nationstar deed of trust still encumbers the property that Ms. Anderson took title to through her upset bid. In the alternate, Plaintiff asserted that upon paying off the First Horizon Loan, Nationstar and its successors in interest were equitably subrogated to the rights and priorities of the First Horizon deed of trust.

¶ 7     On 29 April 2021, Defendants jointly moved for summary judgment. On 3 May 2021, Plaintiff moved for summary judgment. A hearing on the competing motions was held on 26 May 2021 before the Honorable Karen Eady-Williams. On 19 July 2021, the trial court granted Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment.

¶ 8     Defendants filed timely notice of appeal of both the grant of Plaintiff's motion

and the denial of their own summary judgment motion on 13 August 2021.

## II. Analysis

Defendants make three arguments on appeal: (1) the trial court erred in granting summary judgment to Plaintiff because the property was no longer subject to Plaintiff's lien after the execution sale; (2) the Sheriff's deed cannot dictate whether liens remain on real property; and (3) Plaintiff cannot rely on the doctrine of equitable subrogation for survival of its lien because it cannot claim that it was excusably ignorant of the publicly recorded judgment against the property.

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). "The burden is on the moving party to show that there is no triable issue of fact and that he is entitled to judgment as a matter of law. In deciding the motion, all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 391, 594 S.E.2d 37, 40 (2004) (internal marks and citations omitted). We review a grant of summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

### B. Status of the Nationstar Deed of Trust After the Execution Sale

¶ 11    Defendants first argue that following the execution sale, the subject property no longer secured the Nationstar deed of trust.  We agree.

¶ 12    North Carolina General Statute § 1-339.68(b) provides that "[a]ny real property sold under execution remains subject to all liens which became effective *prior to* the lien of judgment pursuant to which the sale is held, in the same manner and to the same extent as if no such sale had been held."  N.C. Gen. Stat. § 1-339.68(b) (2021) (emphasis added).

¶ 13    While this statutory provision does not specifically address the status of liens that become effective *after* the lien of judgment upon which a prior lienholder executes to force a judicial sale, we construe the language of this provision to mean that liens recorded after a prior lien holder has executed and forced a sale are extinguished by the sale.

¶ 14    It is a basic tenet of statutory construction that the intent of the legislature controls.  *Campbell v. Church*, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1978).  "The intent of the legislature may be ascertained from the phraseology of the statute as well as the nature and purpose of the act and the consequences which would follow from a construction one way or another."  *Id.*

¶ 15    A longstanding canon of statutory construction is that of *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of the other."  *See Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498

(1987). This doctrine provides that where the legislature has specifically mentioned exceptions in a statute there is an implied exclusion of other exceptions on which the statute is silent. *See., e.g., id.* (holding that where a statute explicitly excepted actions for breach of express warranties from available defenses but was silent on actions for breach of implied warranties, those defenses were available in breach of implied warranty actions).

¶ 16 While N.C. Gen. Stat. § 1-339.68(b) expressly provides that liens which exist prior to a lien of judgment under which an execution sale is held survive that sale and remain an encumbrance on the real property, the statute is silent on the status of liens that become effective after the lien of judgment under which an execution sale is held. Applying the *expressio unius* canon, however, we can conclude that this implied exclusion was intentional on the part of our Legislature. Therefore, liens that come to encumber a property after the lien of judgment under which an execution sale is held do not survive the sale and are extinguished.

¶ 17 Here, judgment was entered against Ms. Brown in South Carolina on 21 January 2010. This judgment was domesticated in North Carolina and filed with the Office of the Clerk of Mecklenburg County on 15 July 2014. Nationstar's deed of trust was filed in the Mecklenburg Register of Deeds on 16 August 2016, more than six years after the judgment against Ms. Brown was initially entered and more than two years after it was domesticated and filed in Mecklenburg County. The subject

property was sold via execution sale pursuant to the 2010 judgment. Because the Nationstar deed of trust became effective as a lien on the property after the judgment under which the execution sale took place, it was extinguished by the sale.

## C. Sheriff's Deed

Defendants next argue that the Sheriff has no authority to subordinate one lien to another when conducting an execution sale, and that N.C. Gen. Stat. § 1-339.68(b), not the Sheriff's deed, controls with respect to what encumbrances remain on the property. Plaintiff argues, on the other hand, that the Sheriff's deed for the execution sale dictates the terms of the conveyance and controls what liens or other encumbrances remain attached to a property after the property is sold. We agree with Defendants.

The relevant portion of the Sheriff's deed here states:

> NO TITLE OPINION RENDERED. Deed remains subject to all liens and any encumbrances of any kind or nature (recorded or unrecorded) against the subject property, including without limitations a certain Deed of Trust recorded in the Mecklenburg County Register of Deeds on or about April 17, 2000, Book 11222 Page 893-911; a Deed of Trust filed on or about September 22, 2000, Book 11590 Page 792-798, and a Deed of Trust filed on or about June 28, 2001, Book 12385 Page 941-959; and any other restrictions, easements, rights of way, deeds of trust, liens, encumbrances, conveyances or any other clouds on title whatsoever related to prior transfers of and/or encumbrances on the subject property, whether filed or unfiled against the subject property. Purchaser was advised prior to the Sheriff's sale that it is very likely that

> this property is subject to the above and such conveyances, transfers, encumbrances or restrictions *which are not extinguished by the Sheriff's sale* or issuance of this Sheriff's Deed and Purchaser was advised to perform a full title search prior to purchasing the property subject to this Sheriff's Deed.

(Emphasis added). The deed further specifies that "[g]rantee accepts this deed 'as is, where is', including without limitation, subject to all prior liens, restrictions, transfers and/or encumbrances which may or may not be of record regarding the property."

¶ 20 Plaintiff is correct that "[i]n construing a deed and determining the intention of the parties, ordinarily the intention must be gathered from the language of the deed itself when its terms are unambiguous." *Parker v. Pittman*, 18 N.C. App. 500, 505, 197 S.E.2d 570, 574 (1973). However, the Sheriff's deed here cannot be construed to transfer the property subject to the Nationstar lien. The deed simply provides a warning to the buyer that the property may be subject to any liens or encumbrances *not extinguished by the sale*. It notifies the buyer that they should conduct an independent title search to determine what liens or encumbrances, if any, remain attached the property at the time of the sale. The deed also specifically draws the grantee's attention to several deeds of trust that may encumber the property, none of which are the 16 August 2016 Nationstar deed of trust.

¶ 21 Further, even where a deed or deed restriction unambiguously states a term

or condition of transfer, it will not stand if it violates or is contravention to a provision of our General Statutes. *See Belmont Association, Inc. v. Farwig*, 381 N.C. 306, 313, 2022-NCSC-64, ¶ 21 (holding that a restrictive covenant which had the effect of prohibiting the installation of solar panels violated our statutory prohibition on such deed restrictions, covenants, or other binding agreements). Because, as we have held above, pursuant to N.C. Gen. Stat. § 1-339.68(b), liens which attach to a property after a judgment under which the execution sale took place are extinguished by that sale, the Sheriff's deed could not work in contravention to that statute and mandate that such a lien survives, and we decline to read it as doing so.

**D. Equitable Subrogation**

¶ 22    Defendants further contend that the remedy of equitable subrogation is not available to Plaintiff because it cannot assert excusable ignorance of the 2010 judgment that pre-dates its lien on Ms. Brown's property. Plaintiff counters that, if we hold that the Nationstar lien was extinguished upon the execution sale, it is entitled to relief pursuant to the doctrine of equitable subrogation because of misrepresentations made by Ms. Brown about the status of encumbrances on the property at the time that the Nationstar loan was made, and therefore the Nationstar lien should remain on the property. We agree with Defendants.

¶ 23    The earliest case in North Carolina to discuss the doctrine of equitable subrogation was our Supreme Court's decision in *Peek v. Wachovia Bank & Tr. Co.*,

242 N.C. 1, 86 S.E.2d 745 (1955). The Court there said:

> [A]s a general rule one who furnishes money for the purpose of paying off an encumbrance on real or personal property, at the instance either of the owner of the property or of the holder of the encumbrance, either upon the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, will be subrogated to the rights of the prior lienholder as against the holder of an intervening lien, of which the lender was excusably ignorant.

*Id*. at 15, 86 S.E.2d at 755.

Essentially, equitable subrogation may apply to place a lender whose security has been extinguished in the position of a prior creditor where the lender provides money on the condition that "(1) the money be used to extinguish debt owed by the seller of the property so that (2) the lender gains a first-position lien over the property[.]" *U.S. Bank Nat'l Ass'n v. Woods*, 268 N.C. App. 311, 318, 836 S.E.2d 270, 275 (2019). As an equitable creation, this form of subrogation "is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice." *Id.* at 318, 836 S.E.2d at 275-76.

Historically, we have applied the doctrine of equitable subrogation where some mistake has led to the extinguishing of a lender's security. For example, in *Bank of New York Mellon v. Withers*, a lender provided funds for a prior deed of trust on a property to be paid in full in exchange for a first position lien on the property. 240

N.C. App. 300, 303, 771 S.E.2d 762, 765 (2015). As a requirement of the loan, the property was to be transferred to the two individuals to whom the loan was made as joint tenants. *Id.* The closing attorney mistakenly transferred the property to those individuals and three additional people, resulting in the lender only having a security interest in two-fifths of the property rather than the entirety of the property. *Id.* We held that "equity would not allow the attorney's mistake to defeat the agreed purpose of the transaction, which was to secure a loan by granting a first position lien on the property[.]" *Id.* Therefore, the application of equitable subrogation was appropriate. *Id.*

¶ 26        In *Woods*, we held for the first time that the doctrine of equitable subrogation may apply not only in the context of refinancing but also in real estate purchase transactions. *Woods*, 268 N.C. App. at 319, 836 S.E.2d at 276.

¶ 27        However, equitable subrogation "is not an absolute right." *First Union Nat. Bank of N.C. v. Lindley Labs., Inc.*, 132 N.C. App. 129, 130, 510 S.E.2d 187, 188 (1999). The party asserting a right to equitable subrogation must be excusably ignorant of the intervening lien. *See id.* at 131, 510 S.E.2d at 188; *Peek*, 242 N.C. at 15, 86 S.E.2d at 755.

¶ 28        Our equitable subrogation precedent has produced a bright-line rule for what excusable ignorance means, and we decline to do so here. Instead, we determine that it is a fact-intensive inquiry that depends on the specific circumstances of each case.

¶ 29        In *Lindley Labs*, we held that the plaintiff could not claim excusable ignorance of the superior rights of a deed of trust that was recorded upon the cancellation of the plaintiff's deed of trust. *Lindley Labs.*, 132 N.C. App. at 131, 510 S.E.2d at 188. In *American General Financial Services, Inc. v. Barnes*, we held that equitable subrogation did not apply where the plaintiffs failed to properly search the public record before refinancing, resulting in an existing judgment becoming a first priority lien on the property when two higher priority deeds of trust were paid off. 175 N.C. App. 406, 409, 623 S.E.2d 617, 619 (2006).

¶ 30        While the record is sparse regarding what, if any, title search took place prior to the Nationstar loan and what the results of that search were, Plaintiff here concedes that the judgment against Ms. Brown was publicly recorded. However, it contends that it is still excusably ignorant of that judgment because Ms. Brown, in filling out the Nationstar loan documents in 2016 at closing, checked a box that indicated that no liens or judgments encumbered the property. We are unpersuaded by this argument.

¶ 31        The notion that a party cannot assert ignorance where the information is available via a public record or title search is not a novel one in our law. In claims of misrepresentation, we have held that a party cannot assert reasonable reliance on statements concerning matters in the public record where they failed to review those public records when they had the opportunity to do so. *See Hudson-Cole Dev. Corp.*

*v. Beemer*, 132 N.C. App. 341, 346-47, 511 S.E.2d 309, 313 (1999) (where a security interest and deed of trust was publicly and accurately recorded in the county Register of Deeds, the defendant's reliance on misrepresentations made about those documents in a subordination agreement was not reasonable). We similarly hold here that Plaintiff cannot rely on Ms. Brown's statement to relieve it of the consequences of failing to identify a publicly available judgment.

¶ 32        While the undisputed facts are that the Nationstar loan was provided to Ms. Brown on the condition that it be used to pay off the First Horizon loan, because the judgment against Ms. Brown under which the execution sale of her property took place was publicly recorded, Plaintiff cannot claim excusable ignorance of its existence. Therefore, Plaintiff is not entitled to be equitably subrogated as a first-position lienholder in the shoes of the First Horizon loan.

¶ 33        Plaintiff throughout its brief refers to Defendants' conduct, particularly Ms. Brown's, as fraudulent, and contends that not allowing it relief under the doctrine of equitable subrogation would allow Defendants to be unjustly enriched. However, Plaintiff has not brought a claim for fraud or for unjust enrichment against Defendants, despite there being no apparent or argued bar to it doing so at the time it filed its initial complaint. Plaintiff instead opted to pursue relief under a quiet title action and an equitable doctrine, which we hold is not available to it on this particular set of facts.

**E. Summary Judgment**

Because, as we have determined above, the Nationstar lien was extinguished at the time of the execution sale and Plaintiff is not entitled to relief pursuant to the doctrine of equitable subrogation, Plaintiff is thus unable to show, as a matter of law, that it is entitled to a declaratory judgment that the Nationstar lien to which it is a successor remains an encumbrance on the property. Plaintiff has therefore failed to meet its burden for entry of summary judgment in its favor. Consequently, because the undisputed facts and applicable law defeat Plaintiff's claims against Defendants, Defendants are entitled to entry of summary judgment in their favor.

## III. Conclusion

For the aforementioned reasons, we reverse the order of the trial court and remand to the trial court for entry of summary judgment in Defendants' favor.

REVERSED AND REMANDED.

Judges INMAN and COLLINS concur.